**Edward METCALF, Jr., Plaintiff,**

v.

**Ernie LONG, Individually and as a member of the Millsboro Police Department, Leon McCabe, Individually and as a member of the Millsboro Police Department, Mike Warrington, Individually and as a member of the Delaware State Police, Defendants.**

**Civ. A. No. 80–40 LON.**

United States District Court,
D. Delaware.

Aug. 14, 1985.

Edward C. Gill, of Wolhar & Associates, Georgetown, Del., for plaintiff.

H. Murray Sawyer, Jr., and Daniel R. Losco, (argued) of Sawyer & Akin, Wilmington, Del., for defendants.

## OPINION

LONGOBARDI, District Judge.

This is a civil rights action filed under 42 U.S.C. § 1983 by Plaintiff Edward Metcalf, Jr. against Defendants Ernest Long and Leon McCabe, employees of the Millsboro, Delaware, Police Department and Michael Warrington, a member of the Delaware State Police. The Plaintiff alleges that Defendants deprived him of his first, fourth and fourteenth amendment rights by an illegal stop, by the warrantless search of his house and by use of excessive force against him. In addition, Plaintiff alleges a number of pendent state claims against the Defendants, including assault, battery, illegal arrest and false imprisonment. Presently before the Court are cross-motions for summary judgment. The Plaintiff has moved for partial summary judgment on his claim that the initial stop as well as the search of his house violated the fourth and fourteenth amendments. Defendants have filed a cross-motion for summary judgment with respect to all of Plaintiff's claims.

## BACKGROUND

On September 26, 1983, Plaintiff was driving on County Route 411, approximately four miles west of Millsboro, Delaware. As he passed by the residence of an individual named Dennis Ponder, he was stopped by the police and questioned about the whereabouts of Ponder. The officers were at the Ponder residence in the hopes of apprehending or gaining information about the whereabouts of Ponder who had escaped from police custody three days earlier.

The Defendants claim that they stopped Metcalf on September 26 because they had reasonable suspicion to believe that he knew of the whereabouts of Ponder. Such suspicion arose from the fact that on Saturday, September 24, Millsboro police officers who had gone to the Ponder residence to execute a warrant for Ponder's arrest saw Metcalf drive into the driveway to bring Ponder's girl friend home. Thus, on September 26, they recognized Metcalf's car as being the same vehicle they had spotted in Ponder's driveway on the 24th. They became particularly suspicious of the vehicle because they heard it slow down as if it were going to pull into the driveway, yet when the car reached the residence, it accelerated as if to avoid the police. Metcalf admitted slowing the car in the area of the house.

Suspecting that Ponder could be in Metcalf's car, Corporal Jones and Sergeant Philip McCabe (non-parties)[1] pursued the Metcalf vehicle. The Defendants also proceeded after Metcalf in a different vehicle. Philip McCabe and Jones then stopped Metcalf while the state police car carrying the Defendants arrived shortly thereafter.

After the stop, Metcalf was asked to produce his driver's license and registration card and the officers ran a registration check on the license plate. Noticing that Ponder was not in the vehicle, Corporal Warrington then asked Metcalf if he knew where Ponder was. There is some dispute as to exactly what Metcalf said in response. Corporal Warrington has stated that Metcalf replied that he did not know where Ponder was but that the police should "take his word for it, this would be taken care of today." Metcalf denies making such a statement and has testified that all he said was that he knew nothing of Ponder's whereabouts.

Shortly after the initial stop and while he was still questioning Metcalf, Corporal Warrington learned that Metcalf's vehicle bore fictitious tags and was improperly registered. Metcalf was then placed under arrest for the traffic violations and ordered to enter a Delaware State Police vehicle. Inside the patrol car, Corporal Warrington continued to question Metcalf about the whereabouts of Dennis Ponder and asked him specifically whether Ponder was hiding at Metcalf's home.

Again, some dispute arises as to what was said by the Plaintiff. Warrington has testified that Metcalf said that Ponder was not at his residence and consented to a search of his residence to substantiate that fact. Metcalf denies ever giving any type of consent to the officers to search his home.

The officers then proceeded in the police patrol car to Plaintiff's residence. After the police car entered the driveway, Corporal Warrington got out and ordered Metcalf to get out and open the door to his house. Metcalf refused to unlock the door and stated that the only way the officers could get into the house to search would be by kicking the door in. At that point, Defendant McCabe searched Metcalf and a struggle ensued which resulted in Metcalf falling to the ground. During the struggle, Metcalf yelled some words out loudly although the exact content of what he said remains in dispute.[2] The search of Metcalf yielded his house keys which Defendants Warrington and McCabe then used to enter the house. The officers searched all areas in the house that were big enough to conceal a body but did not find Ponder within the house nor on the premises during a subsequent search of the surrounding property.

Plaintiff was then taken to the police station for processing on the traffic violations and on the additional charges of hindering prosecution and possession of drugs.[3] He was not taken for any medical attention on the day of his arrest although he did go to an orthopedic specialist on Friday of that week, four days after the incident, for complaints from injuries which had allegedly resulted from his scuffle with Sergeant McCabe. The doctor diagnosed him as having a neck injury and a pinched nerve in his right wrist. The pinched nerve was thought to be a consequence of the handcuffs. The neck injury was a whiplash type injury involving some torn ligaments and some scar tissue at the base of his neck. Application of hot compresses was recommended as treatment and Plaintiff was given a collar to be used at bed time. No other treatment was administered.

---

1. Leon McCabe, not Philip McCabe, is a Defendant in this case.

2. Defendant Long has testified that he thought Metcalf yelled out, "Trooper, Trooper" as a clue for somebody in the house to take off. Metcalf

has testified that he yelled out, "Officer, what are you doing?" loudly several times.

3. The drug charges stemmed from the search of Metcalf's person which revealed what appeared to be a marijuana cigarette in his jacket pocket.

In considering the cross-motions for summary judgment, the Court bears in mind the well established standard for summary judgment set forth in Rule 56 of the Federal Rules of Civil Procedure. Summary judgment may be granted only where the moving party can establish that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. The same is true when cross-motions are before the Court. A court may not grant summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed. *Rains v. Casacade Industries, Inc.*, 402 F.2d 241, 245 (3d Cir. 1968). In considering this motion, the Court will disregard the number of facts which remain in dispute if these facts are not material to the issues on summary judgment.

## ELEMENTS OF A SECTION 1983 CLAIM

Before discussing the specific aspects of Metcalf's claims against the police officers, it is important to note the requirements necessary for a claimant to prevail in an action brought under 42 U.S.C. § 1983. Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

■ In any section 1983 action, the initial inquiry must focus on whether two essential elements are present: first, whether the conduct complained of was committed by a person acting under color of state law; and second, whether this con-duct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981).

■ The parties do not contest the fact that the "under color of state law" requirement is met in this case. Defendants were state employees acting under state authority and with discretion to act thereunder. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Thus, the decision of the Court must focus on what federal right, if any, is at stake in each of the Plaintiff's claims. As the later discussion will indicate, the analysis of what specific right is at issue is not a mere academic exercise and is necessary in determining whether a cause of action may be maintained under section 1983.

In the present case, Metcalf's claims may be broken into three separate incidents: (1) the initial stop and arrest; (2) the entry into Metcalf's home and property, and (3) the use of excessive force against Metcalf. The specific rights allegedly violated by each of these occurrences will be examined separately.

## THE INITIAL STOP AND ARREST

Plaintiff alleges that the initial stop and arrest by Defendants violated his rights under the fourth and fourteenth amendments "since there was neither probable cause nor reasonable suspicion that Plaintiff had committed a crime to justify such stop and arrest." Although the complaint is unclear as to whether Plaintiff is alleging that the initial stop violated the fourth amendment by its application to the states through the fourteenth,[4] the Court assumes that is the case. The parties did not suggest in their briefs or oral argument that either the stop and arrest claim or the search of the house claim were grounded in any right other than the fourth amendment

---

4. The guarantee against unreasonable searches and seizures contained in the fourth amendment has been made applicable to the states by reason of the due process clause of the four-teenth amendment. *Wolf v. Colorado*, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949); *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

protection against unreasonable search and seizure.

The facts surrounding Metcalf's initial stop by the Delaware State Police are not in dispute and both parties have moved for summary judgment on the facts presently in the record. The standard to be used in determining whether the stop violated Metcalf's constitutional rights has evolved in a long line of Supreme Court decisions beginning with *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and continuing through the most recent decisions on investigative stops, *United States v. Sharpe*, — U.S. —, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *United States v. Montoya de Hernandez*, — U.S. —, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985). In analyzing the constitutionality of a stop, it is important to bear in mind the oft repeated refrain in these Supreme Court decisions, "The Fourth Amendment is not ... a guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures." *United States v. Sharpe*, 105 S.Ct. at 1573.

■ In *Terry v. Ohio*, the Court first gave meaning to what type of stop is reasonable under the fourth amendment. A stop of an individual for questioning is "reasonable" where the intrusion entailed by the stop is minimal and the officers have a reasonable suspicion that the detained individual is involved in criminal activity. 392 U.S. at 21–22, 88 S.Ct. at 1879–1880. The stop of an automobile is evaluated in a similar manner and is reasonable where the governmental interest in investigating an officer's reasonable suspicion outweighs the fourth amendment interest of the driver and passengers in remaining free from the intrusion. *Deleware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979).

Although a number of Supreme Court cases have addressed the Terry stop situation, the actual scope of the decisions have been narrow. Initially, the "Terry stop" was limited to situations "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot...." 392 U.S. at 30, 88 S.Ct. at 1884. Recently, the Supreme Court has extended Terry to cover stops of those who may have been involved in a completed crime. *United States v. Hensley*, — U.S. —, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). The Court based this extension on the rationale that the reasonableness test can be applied as easily where past crimes are suspected as it can be where suspicion of ongoing or contemplated crime exists. The Court noted:

> [w]here police have been unable to locate a person suspected of involvement in a past crime, the ability to briefly stop that person, ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice. Restraining police action until after probable cause is obtained would not only hinder the investigation but might also enable the suspect to flee and remain at large.

*Hensley* 105 S.Ct. at 677.

The reasoning of *Hensley* is applicable to the present case which involves both a past and a possible ongoing violation. Not only could the police have had reason to question Metcalf about the whereabouts of a fleeing felon[5] but they also may have possessed a reasonable suspicion that Metcalf himself was presently breaking the law by harboring a fugitive. 11 Del.C. § 1244.

■ To determine whether either of these suspicions by the officers were reasonable, the Court must look at the facts

---

5. Little authority exists on the issue of what level of suspicion is necessary to stop and question potential witnesses about a crime. The authority that does exist suggests that the fourth amendment does not permit the stopping of potential witnesses to the same extent as those suspected of crime. *See, e.g.*, Lafave, *Searches & Seizure* § 9.2 (1978); *United States v. Ward*, 488 F.2d 162 (9th Cir.1973). However, this Court need not decide what meets that standard at this time because the Plaintiff in this case could have been suspected of violating 11 Del.C. § 1244.

specific to this case and weigh the extent of the intrusion against the law enforcement reasons for the stop. In making this balance, the Court must give due weight to the officers' judgment and "to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883. In the final analysis, it is the totality of circumstances confronting the officers at the time that presents the objective basis for determining whether there was a basis for reasonable suspicion. *U.S. v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

■ In the present case, the initial intrusion was not overly burdensome. Although the stop of Metcalf as he drove by in his automobile is unquestionably a seizure and subject to scrutiny under the fourth amendment, *Delaware v. Prouse*, 440 U.S. at 653, 99 S.Ct. at 1395, it was not so intrusive as to require probable cause. Two factors led the officers to reasonably suspect that Metcalf could be involved in criminal activity. First, the officers recognized the Metcalf vehicle as the same car that had brought Ponder's live-in girl friend home two days earlier, at a time shortly after Ponder had escaped. Second, the police officers heard the vehicle round the corner in front of the Ponder residence and testified that it sounded as if it was about to turn into the driveway until the driver saw the police cars and accelerated past the house. A strong reaction to the sight of police officers may be sufficient to stop and question an individual as "deliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea* ...." *Sibron v. New York*, 392 U.S. 40, 66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968).

A person who manifests concern for the presence of the police, who repeatedly glances at the officer, who changes his direction in an apparent attempt to avoid confronting the officer, or who flees at the sight of an officer will commonly be detained and questioned. It is not to be doubted that such reactions may be taken into account by the police and that together with other suspicious circumstances these reactions may well justify a stopping for investigation.

Lafave, *Search & Seizure* § 9.3(c) (1978) (citations omitted).

In the present case, there were reasons for the officers to be suspicious of Metcalf as well as a strong law enforcement interest in apprehending a fleeing felon. If the officers had not made the split second decision to stop Metcalf, the possibility of capturing Dennis Ponder or gaining some information as to his whereabouts would have evaporated. As the Supreme Court noted in *Adams v. Williams*, 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1922–23, 32 L.Ed.2d 612 (1972):

The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape.... A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

For the foregoing reasons, the Court finds that the initial stop of Metcalf was justified by the officers' reasonable suspicion that either the driver of the vehicle was Dennis Ponder or that the driver had Ponder in the vehicle or knew of his whereabouts.

■ The Plaintiff next argues that even if the initial stop of his vehicle was valid, further detention after the officers ascertained that Ponder was not in the car was unreasonable.[6] Under *Terry*, the Court must inquire into whether the extent of the

---

**6.** The Defendants argue that Metcalf's statement that he did not know the whereabouts of Ponder but that it would "all be taken care of today" provided adequate grounds for further detention of Metcalf. However, the Court cannot rely on this fact in deciding this motion for summary judgment as the statement has been denied by Metcalf, leaving it clearly in dispute.

stop "was reasonably related in scope to the circumstances which justified the interference in the first place." 392 U.S. at 20, 88 S.Ct. at 1879. The inquiry, however, is not a license for unrealistic second guessing by creative judges engaged in post-hoc evaluations of police conduct who can almost always imagine some alternative means by which the objectives of the police might have been accomplished. *United States v. Sharpe*, 105 S.Ct. at 1576. The Court finds that the stop in this case did not exceed the permissible scope for several reasons. First, the officers not only had reasonable suspicion that Ponder was in the car but also that Metcalf, whom they had seen driving by Ponder's house (which was in an isolated area) twice in three days, might know where he was. The officers certainly should have been allowed enough time to confirm or deny that suspicion.

■ In addition, if a vehicle or its occupant is subject to a stop for reasonable suspicion of a violation of the law, it is permissible to detain the driver in order to check his license and registration. *Delaware v. Prouse*, 440 U.S. at 663, 99 S.Ct. at 1401.[7] Because the officers in this case had reasonable suspicion to conduct the

initial stop, further detention of the Plaintiff for a matter of "minutes" in order to check his license and registration and to question him briefly about Ponder did not violate his rights. Once the officers discovered that Metcalf's vehicle was improperly registered, further detention was proper since the officers had probable cause to place him under arrest at that time. Thus, the Court finds that Plaintiff's constitutional rights were not violated by the initial stop and subsequent brief detention of his vehicle.

## SEARCH OF THE HOUSE

■ The other fourth amendment question raised in this case is whether the warrantless search of Metcalf's house was unreasonable.[8] In *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), the Supreme Court held that an officer without a search warrant may legally search for the subject of an arrest warrant in the home of a third party only where consent has been given or exigent circumstances exist. The Defendants[9] argue that summary judgment should be granted in their favor both because the officers believed [10] they had Metcalf's con-

---

7. In *Delaware v. Prouse*, the Supreme Court found that spot checks of licenses and registrations are unconstitutional if conducted on a purely discretionary basis. However, such checks are permissible if there is reasonable suspicion for the initial stop because that initial requirement protects against the exercise of unfettered discretion by police officers. 440 U.S. at 663, 99 S.Ct. at 1401.

8. The complaint alleges that the search also violated Plaintiff's first amendment rights. Since that issue was not raised in the briefs or oral argument (and the Court cannot imagine the applicability of the first amendment to this situation), the first amendment allegation is considered abandoned and will be dismissed in the absence of an application from the Plaintiff.

9. Defendant Long did not participate in the warrantless search of Metcalf's home nor did he even see Defendants Warrington and McCabe enter the house. Some affirmative link between the Plaintiff's injury and the Defendants' conduct is essential to maintain an action under section 1983. *Rizzo v. Goode*, 423 U.S. 362, 372–73, 96 S.Ct. 598, 604–05, 46 L.Ed.2d 561 (1976). Because no such affirmative link exists

in this case, Count II of the complaint is dismissed as to Long.

10. Whether the constitutionality of consent searches depends on whether the consenting party *in fact* made a free and competent choice and consented or requires only that the police had a reasonable belief that a voluntary consent was given is unsettled in this Circuit and is unclear in much of the case law. The Fifth Circuit has taken a definitive position on the issue stating that: "No matter how genuine the belief of the officers is that the consenter is apparently of sound mind and deliberately acting, the search depending on his consent fails if it is judicially determined that he lacked mental capacity." *United States v. Elrod*, 441 F.2d 353, 356 (5th Cir.1971). In *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the Supreme Court impliedly indicated agreement with the *Elrod* approach by condemning consents given under coercion and requiring a focus on the actual voluntariness of the consent. However, this Court makes no finding on this issue at this time as it finds that consent was inadequate under either approach because of the subsequent withdrawal of consent.

sent for the search and because of the existence of exigent circumstances. The Plaintiff argues that he never gave his consent and that exigent circumstances were not present.

▇ The question of whether valid consent to a search has been given is "a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973). Consent must be voluntarily given and not be the result of duress or coercion, either express or implied. *Id.* In the present case, the Plaintiff denies that he ever gave the officers his consent to search his residence. The Defendants argue that Metcalf not only told them they could search his residence but also cooperated in the investigation of the search by providing them with directions to his house. However, the Court finds that Metcalf's alleged initial consent to search is irrelevant in light of his later undisputed refusal to allow Defendants into his residence. Although the exact words of his statement are uncertain, both parties agree that Metcalf stated that the only way Defendants would be able to enter his house would be if they kicked the door in. The Defendants argue that that statement was not an effective repudiation of Metcalf's earlier consent. ·

▇ If consent to a search contains no agreement as to duration, it is implicitly limited by the individual's right to withdraw the consent. *United States v. Ward*, 576 F.2d 243 (9th Cir.1978); *Mason v. Pulliam*, 557 F.2d 426 (5th Cir.1977). Although the statement, "If you want to go in there, kick the door in" is not an explicit withdrawal of consent, its import is apparent. Metcalf, who had possession of the keys to his residence, clearly did not want the officers to enter, otherwise, he would have volunteered the keys. The Court finds that even if Defendants' version of the facts was correct and Metcalf initially consented to the search, his later non-cooperation with the officers indisputably indi-cates that the consent was no longer effective.

Because there was no voluntary consent to search, the Court must examine whether exigent circumstances justified the Defendants' unauthorized entry into Metcalf's home.

> The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in ·clear and specific constitutional terms.... In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

*Payton v. New York*, 445 U.S. 573, 589–90, 100 S.Ct. 1371, 1381–82, 63 L.Ed.2d 639 (1980). As the language of *Payton* suggests, the exigent circumstances requirement should be construed strictly in order to protect an individual's justified expectation of privacy in his home.

Although the circumstances may vary from case to case, the Third Circuit has set forth a number of factors to be considered in determining whether "exigent circumstances" exist. The Court should consider whether a "grave offense has been committed", whether the "suspect sought is reasonably believed armed", whether "a strong reason exists to believe the suspect is on the premises and a likelihood that the suspect might escape if not caught quickly." *Government of Virgin Islands v. Gereau*, 502 F.2d 914, 928 (3d Cir.1974), *cert. denied*, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975); *United States v. Rubin*, 474 F.2d 262, 268 (3d Cir), *cert. denied*, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973). These factors indicate the degree of scrutiny necessary to justify a warrantless search because of exigent circumstances. The most relevant considerations in the present case are: (1) the dangerousness of the suspect, and (2) the possibility

that the suspect will escape in the time necessary to get a search warrant.

 Weighing these considerations in light of the facts of this case, it is clear that they were not a severe risk when weighed against the intrusion into the Defendant's home. First, Ponder was not known to be a particularly dangerous individual. The warrants for his arrest had been issued on charges of escape, felony theft, driving under the influence and several traffic charges. Although these charges are serious, it is unlikely that they meet the *Gereau* requirement that a "grave offense has been committed." In addition, the second *Gereau* consideration, the likelihood that the suspect is presently armed, is also not met here. Ponder was not wanted for the commission of any violent crimes. Indeed, nothing in the record indicates that any of the officers had reason to believe Ponder was armed or violent.

However, the possibility of violence is not the only consideration in making a finding of exigent circumstances. The Court must also consider the probability that the suspect is on the premises and likely to escape if not caught quickly. Assuming for the sake of argument that the police officers had probable cause to believe that Ponder was on the premises, the chance that Ponder could escape before the officers had time to obtain a warrant was very unlikely. Thus, the Court finds that exigent circumstances did not justify the Defendants' warrantless entry into Plaintiff's house and summary judgment is granted in favor of the Plaintiff.

11. Not all torts of state officials violate the Constitution or laws of the United States and thus are not always actionable under section 1983. "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort law principles." *Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979).

12. It is necessary to comment on the important distinction between the procedural and substan-

## EXCESSIVE FORCE

Metcalf's final claim under section 1983 alleges that the Defendants used excessive force against him while he was in custody thereby violating his rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution. Defendants have moved for summary judgment on the grounds that the officers' use of force was reasonable and did not amount to a violation of any federally protected rights.

 Excessive force used by police officers can form the basis of a constitutional violation which may be redressed through section 1983. However, a question arises as to exactly which constitutional right is infringed when excessive force is used.

 Although some decisions have not specified what constitutional right is implicated, *see, e.g., Landrigan v. City of Warwick*, 628 F.2d 736 (1st Cir.1980), such specificity is necessary in order to determine whether a constitutional violation has occurred.[11] *Soto v. City of Sacramento*, 567 F.Supp. 662, 670 (E.D.Ca.1983). The applicable standard varies depending on which right is allegedly infringed. For example, if the use of excessive force is alleged to violate the fourth amendment, the fourth amendment reasonableness standard is applied; *i.e.,* balancing the extent of the intrusion against the need for it. *Tennessee v. Garner*, —— U.S. ——, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). On the other hand, if the police officers' actions allegedly violate the substantive due process aspect of the fourteenth amendment,[12] in-

tive aspects of the due process clause of the fourteenth amendment. A procedural due process claim is based on an allegation that the procedures used by the state in effecting the deprivation of a life, liberty or property interest were inadequate. Substantive due process is not a claim of procedural deficiency but rather a claim that the state's conduct is inherently impermissible. *See, Schiller v. Strangis*, 540 F.Supp. 605, 613–14 (D.Mass.1982). Procedural due process claims focus on the procedures available to the Plaintiff either before or after the deprivation while substantive due process focuses on the deprivation itself. Substantive

dependent of the fourth amendment, the Court must examine whether the actions were so unreasonable as to "shock the conscience" of the Court. *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). Finally, where the eighth amendment is allegedly infringed, the Court must ask whether the punishment is unnecessarily cruel in view of the purpose for which it is used. *Weems v. United States*, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910).

Although some decisions have not specified what right is infringed when a police officer utilizes excessive force against an individual and while other cases have routinely applied substantive due process, upon close analysis, a pattern begins to emerge. Cases discussing the use of excessive force by state officials may be broken into three categories: first, those cases involving the use of excessive force to effectuate an arrest; second, those cases involving the use of force against an individual in police custody and/or a pretrial detainee; and finally, those cases involving the use of force against a convicted individual. In each of these situations, different constitutional rights may be implicated.

Supreme Court precedent lays the groundwork for such distinctions. For example, in evaluating the constitutionality of a Tennessee statute which allowed a police officer to "use all the necessary means to effect the arrest" of a fleeing felon, the court subjected the statute to scrutiny under the fourth amendment.

... [t]here can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment.

A police officer may arrest a person if he has probable cause to believe that person committed a crime. Petitioners and appellant argue that if this require-

ment is satisfied the Fourth Amendment has nothing to say about *how* that seizure is made. This submission ignores the many cases in which this Court, by balancing the extent of the intrusion against the need for it, has examined the reasonableness of the manner in which a search or seizure is conducted.

105 S.Ct. at 1699 (citations omitted). The Court goes on to evaluate the seizure solely in light of the fourth amendment without going into any fourteenth amendment substantive due process analysis.

On the other hand, in *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983), the Court applied the due process clause when discussing the rights of an individual who had been apprehended but not yet convicted.

The Due Process Clause, however, does require the responsible government or governmental agency to provide medical care to persons ... who have been injured while being apprehended by the police. In fact, the due process rights of a person in Kivlin's situation are at least as great as the Eighth Amendment protections available to a convicted prisoner.

*Id.* 103 S.Ct. at 2983. Of course, the *City of Revere* case was not the first case to apply substantive fourteenth amendment protections to individuals in custody. In *Rochin v. California*, the Court first articulated the constitutional protection due an individual in custody. In *Rochin*, the court held that subjecting a suspect against his will to a stomach pump to obtain evidence violated the due process clause of the fourteenth amendment. The court found that action violates the due process clause when it "so shocks the conscience" that it "is bound to offend even hardened sensibilities." 342 U.S. at 172, 72 S.Ct. at 209. Since the *Rochin* decision, numerous courts

due process is based on "the right to be free of state intrusions into realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as literally to shock the conscience of a court." *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir.1980).

In this case, it is unclear whether Metcalf is claiming a violation of procedural or substantive due process or both. However, in neither the briefs nor the oral argument was a procedural due process argument raised. Thus, the Court assumes that the Plaintiff has based his claim on substantive due process.

have applied the "shocks the conscience standard" to determine when the due process rights of individuals in custody have been violated. *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973); *Duran v. Elrod*, 542 F.2d 998 (7th Cir.1976); *Soto v. City of Sacramento*, 567 F.Supp. 662 (E.D.Ca.1983); *Classon v. Krautkramer*, 451 F.Supp. 12 (E.D.Wis.1977).

■ Once an individual is actually convicted of a crime, additional constitutional protection under the eighth amendment is applicable.[13] However, eighth amendment protections only apply to convicted individuals and cannot be applied to pretrial detainees.

The Court of Appeals properly relied on the Due Process Clause rather than the Eighth Amendment in considering the claims of pretrial detainees. Due Process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be "cruel and unusual" under the Eighth Amendment.

*Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 1872 n. 16, 60 L.Ed.2d 447 (1978).

In this case, Metcalf has claimed violations of his rights under the fourth, eighth and fourteenth amendments. As the foregoing discussion indicates, all of these rights are not applicable in this fact situation. Since Metcalf was not a convicted prisoner at the time of the alleged violation, the eighth amendment claim may be readily dismissed. "The state does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *Ingraham v. Wright*, 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 1412 n. 40, 51 L.Ed.2d 711 (1977).

■ The fourth amendment claim is also inapplicable to Metcalf's claim of excessive force. Analysis under the fourth amendment is most appropriate when the complaint is specifically directed to the method of arrest and seizure of the person. *Bell v. City of Milwaukee*, 746 F.2d 1205, 1278 n. 87 (7th Cir.1984). In the present case, Metcalf had been placed under arrest for some time before the violence occurred. Thus, the fourth amendment reasonableness analysis is inapplicable to events occurring later than that initial seizure.

■ Metcalf's claim under the substantive due process aspect of the fourteenth amendment remains. Substantive due process is a nebulous term, the meaning of which readily changes depending on the context of the particular situation. Substantive due process derives from the idea that the framers of the Constitution intended to protect rights other than those specified. In deciding that certain rights not specified in the constitution are protected by the due process clause, the Court has looked to those rights which are "so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Snyder v. Massachusetts*, 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). One right which has been deemed "fundamental" is the right of individuals to be free from treatment by law enforcement officers that "shocks the conscience." *Rochin* 342 U.S. at 172, 72 S.Ct. at 209. Thus, in evaluating a claim of excessive force under the fourteenth amendment, the Court must determine whether the conduct by the police officers is such that it "shocks the conscience."

Such a "vague and discretionary" standard is not easily utilized. However, the ambiguous standard set forth in *Rochin* is still the law of this nation and must be applied. *See, Baker v. McCollan*, 443 U.S. 137, 147–49, 99 S.Ct. 2689, 2696–97, 61

---

13. The eighth amendment is applicable to situations where punishment "has been deliberately administered for a penal or disciplinary purpose, with the apparent authorization of high prison officials charged by the state with responsibility for care, control, and discipline of prisoners." *Johnson v. Glick*, 481 F.2d 1028, 1032 (2d Cir.1973). On the other hand, spontaneous attacks by guards or other inmates are protected by the fourteenth amendment. *Id.*

L.Ed.2d 433 (Blackmun, J. concurring); *Luce v. Hayden,* 598 F.Supp. 1101, 1104 (D.Maine 1984). Appropriate application requires reference to the language of *Rochin* itself.

The vague contours of the Due Process Clause do not leave judges at large. We may not draw on our merely personal and private notions and disregard the limits that bind judges in their judicial function. Even though the concept of due process of law is not final and fixed, these limits are derived from considerations that are fused in the whole nature of our judicial process.

342 U.S. at 170, 72 S.Ct. at 208.

■■■■ One such limit is the protection against undue physical abuse by law enforcement officers. However, the constitutional protection under substantive due process is not coextensive with the common law action for assault and battery. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates ... constitutional rights." *Johnson v. Glick,* 481 F.2d at 1033. Thus, in determining whether the constitutional line has been crossed, the Court must look to the totality of circumstances surrounding the action. Factors such as the need for application of force; the relationship between the need for force and the amount of force used; the extent of the injury; and the purpose of the force must be considered. *Davidson v. Dixon,* 386 F.Supp. 482, 488 (D.Del.1974), *aff'd mem.,* 529 F.2d 511 (3d Cir.1975).

■■■ Application of such factors to the present case leads the Court to find that even when the facts are considered in the light most favorable to the Plaintiff, the Defendants' actions did not amount to a substantive violation of the fourteenth amendment. The Plaintiff alleges that when Defendants searched him in front of his home, he was "smashed to the ground, neck and head first." At this point, Defendant put full body weight on Plaintiff, causing pressure on Plaintiff's neck and head. Even assuming that there was no cause for this attack on Plaintiff by De-

fendant McCabe, the action by the officers does not rise to the level of conduct that "shocks the conscience." Even Metcalf's version of the incident indicates that it was a brief skirmish giving rise to only minor injuries. Metcalf did not go for medical treatment until four days after the incident and, at that time, was diagnosed as having a whiplash type neck injury and a pinched nerve in his right wrist. He saw the doctor approximately three times after that and the only treatment prescribed was the application of heat to the neck injury and a collar to sleep in. No medication was prescribed.

Where the injury is this minor, it is impossible to label Defendants' actions as conduct that "shocks the conscience." As this district has found repeatedly in cases involving allegations of excessive force by police officers, a mere assault and battery does not rise to the level of a constitutional violation. *Shaw v. State,* C.A. No. 83–88, slip op. (D.Del. Aug. 10, 1983) (injuries to right leg and buttock by police dog and kick in ribs by police officer is not a constitutional violation); *Allen v. Short,* C.A. No. 83–614, slip op. (D.Del. Apr. 5, 1984) (kick by police officer not a constitutional violation). "[P]laintiff must show more than that he suffered an intentional tort at the hands of a defendant who was acting under color of state law; he must prove acts which amount to shocking or brutal conduct." *Davidson,* 386 F.Supp. at 488. Thus, the Court finds that Defendants' actions in this case did not violate the Plaintiff's substantive due process rights under the fourteenth amendment.

### IMMUNITY

Defendants have moved that the complaint against them be dismissed because, even if their actions violated Metcalf's rights, they were protected by the doctrine of immunity prescribed in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see, also, Mitchell v. Forsyth,* —— U.S. ——, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Because the Court has found for the Defendants on all but one of

their summary judgment motions, it is necessary to discuss immunity only as it applies to Defendants' actions in the warrantless search of Metcalf's house.

In *Harlow*, the Supreme Court stated that immunity is available only to officials whose conduct conforms to a standard of "objective legal reasonableness." 457 U.S. at 819. An official is protected by qualified immunity except where his conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818.

 As the discussion of the law concerning warrantless searches suggests, the law in this area is clearly established. The two Third Circuit cases discussing what may constitute "exigent circumstances" when a search for a suspect is being conducted were both decided in the 1970's. *Government of Virgin Islands v. Gereau*, 502 F.2d 914 (3d Cir.1974); *United States v. Williams*, 612 F.2d 735 (3d Cir.1979), *cert. denied*, 445 U.S. 934, 100 S.Ct. 1328, 63 L.Ed.2d 770 (1980).[14] A ruling of the Third Circuit may be sufficient for law to be considered "clearly established." *Gann v. Schramm*, 606 F.Supp. 1442 (D.Del. 1985); *Dehorty v. New Castle County Council*, 560 F.Supp. 889 (D.Del.1983). The Court finds that Defendants' actions in searching Plaintiff's house violated clearly established law of the Third Circuit and they are not immune from liability on that count of Plaintiff's complaint.

## STATE CLAIMS

 Because all the federal claims have been decided on summary judgment, the Court chooses not to decide the state immunity issue and dismisses the state claims without prejudice. The only remaining issue before this Court is the assessment of damages and a damages determination in this Court is not sufficiently related to the numerous state claims for this Court to exercise its pendent jurisdiction. If "feder-

al claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Broderick v. Associated Hosp. Serv. of Philadelphia*, 536 F.2d 1, 4 n. 15 (3d Cir.1976).

**14.** In *Mitchell v. Forsyth*, —— U.S. ——, ——, 105 S.Ct. 2806, 2820, 86 L.Ed.2d 411 (1985), the Supreme Court found that two Federal District Court decisions are not sufficient for law to be "clearly established." However, two decisions of the Third Circuit are of greater weight in this district than the two district court opinions in *Mitchell* which were from different districts.