**Ramon Elias OSPINA, Plaintiff,**

v.

**DEPARTMENT OF CORRECTIONS, STATE OF DELAWARE, Department of Public Safety, State of Delaware, Robert Durnan, Clifford M. Graviet, Howard Young, and Robert J. Watson, Defendants.**

**Civ. A. No. 89–585–JRR.**

United States District Court, D. Delaware.

Aug. 14, 1991.

Carolyn M. McNeice, McNeice & Favata, P.A., Wilmington, Del., for plaintiff.

Stuart B. Drowos, Deputy Atty. Gen., Dept. of Justice, State of Del., Wilmington, Del., for defendants.

ROTH, Circuit Judge [*].

Our return to this case is prompted by the motion of defendant Robert Durnan for summary judgment on plaintiff Ramon Ospina's two remaining claims. As explained in detail in our October 31, 1990 opinion, Ospina asserts that Durnan applied excessive force to Ospina's wrist during an otherwise lawful arrest. He first claims that this alleged transgression violated his right to freedom from excessive force, and that he is entitled to damages under 42 U.S.C. § 1983. Ospina's second claim is for negligence under Delaware law.

In our earlier opinion granting Durnan's motion to dismiss all but these two claims, we permitted Durnan to conduct discovery on the limited question of his possible qualified immunity from liability under § 1983. Durnan failed to initiate such discovery, but Ospina did take Durnan's deposition. Apparently believing that the deposition alone entitles him to relief, Durnan has now moved for summary judgment on the § 1983 and negligence claims. For the reasons that follow, the motion must be denied.

I. *Section 1983: Qualified Immunity*

■ Ospina presents an interesting threshold issue, namely whether qualified immunity applies at all to the handcuffing. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), instructs

---

[*] The issues raised by the defendant's motion for summary judgment were briefed before Judge Roth assumed her duties as a member of the

United States Court of Appeals for the Third Circuit on July 22, 1991.

that qualified immunity is made available to "government official performing *discretionary* functions." *Id.* at 3038 (emphasis supplied). As the Supreme Court noted in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), discretionary actions call for "judgments" that are "almost inevitably influenced by the decisionmaker's experience, values, and emotions." *Id.* at 2737. Citing to the Restatement (Second) of Torts, Ospina notes that under traditional common law analysis, ministerial actions are routine procedures necessary to the administration of law that call for little or no choice. Restatement (Second) of Torts § 895D, comment h (1979). In general, state law enforcement officials making judgments in connection with searches and seizures perform functions sufficiently discretionary to qualify for the immunity defense. *Good v. Dauphin County Social Services*, 891 F.2d 1087, 1091 (3d Cir.1989) (citing *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) and *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Ospina, however, asserts that the discrete task of handcuffing is so routine that it is "clearly" ministerial, and that qualified immunity cannot apply. We disagree.

■ Setting aside for the moment the fact that many courts have questioned whether the common law distinction between ministerial and discretionary functions may be used as a basis for determining the existence of immunity from § 1983 liability, *see, e.g., Coleman v. Frantz*, 754 F.2d 719, 727 (7th Cir.1985), we have no doubt that the act of handcuffing may be discretionary in nature. The decision to handcuff, like the decision to initiate an arrest, calls for a great deal of highly fact-specific judgment. Indeed, as is clear from the Supreme Court's excessive force cases, the entire arrest procedure, including handcuffing, requires the police officer to consider carefully whether the suspect is a threat to nearby persons or is likely to offer resistance or flee. The police officer conducting an arrest must not only decide whether to handcuff, but whether the cuffs, if applied, must accomplish a greater or lesser degree of restraint. This decision requires the officer to rely on his or her own training and experience in making a quick, but vital, assessment of a sometimes complex set of circumstances. The officer does not simply obey an order to handcuff in all cases or to handcuff with an equal amount of force. There can be no doubt, then, that when handcuffing involves the making of the decision to handcuff and the consideration of the method to accomplish the handcuffing, that act is discretionary.

Under existing Supreme Court precedent, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1981). If the law violated was clearly established, "the immunity defense ordinarily should fail, since a reasonably competent official should know the law governing his conduct." *Id.*

Because we have already held that the right to freedom from excessive force in an arrest was "clearly established" at the time of Ospina's arrest, *Ospina v. Department of Corrections*, 749 F.Supp. 572, 580 (D.Del.1990), Durnan is entitled to immunity "if, but only if," based on the information available to him at the time of the arrest, a reasonable official in Durnan's position could have believed that Durnan's conduct was consistent with the existing law on excessive force. *See Good v. Dauphin Social Services*, 891 F.2d 1087, 1092, 1094 (3d Cir.1989) (search and seizure case). Summary judgment for Durnan is therefore appropriate only if, based on Ospina's sworn version of the facts, a reasonable person in the circumstances could have believed the force applied was lawful, i.e., not excessive. *Id.* at 1094–95.

■ Our first task is to delineate the scope of the law on excessive force on October 21, 1987, the day Durnan arrested Ospina. Durnan argues that his behavior should be analyzed in light of *Black v.*

*Stephens,* 662 F.2d 181 (3d Cir.1981), *cert. denied,* 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982), where the Third Circuit held that the appropriate test was the "shock the conscience" standard derived from the due process clause of the Fourteenth Amendment. *Id.* at 188. ("A law enforcement officer's infliction of personal injury on a person by the application of undue force may deprive the victim of a fourteenth amendment 'liberty' without due process of law.") A careful examination of the state of the law at the time of Ospina's arrest reveals that Durnan relies on the wrong standard.

A reasonable police officer on October 21, 1987 would, of course, look to the federal courts for guidance on the constitutional limits on the application of force in an arrest. In March of 1985—more than two years before Ospina's arrest—the Supreme Court had decided in *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), that "there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness analysis of the Fourth Amendment." 105 S.Ct. at 1699. While *Garner* involved the most extreme form of excessive force, it nevertheless was a strong suggestion, if not an overt command, that Fourth Amendment analysis should apply to claims of excess force during arrest.

Between the date of the *Garner* decision and Ospina's arrest, the Third Circuit had no occasion to consider whether a Fourth Amendment analysis should apply instead of one grounded in the Fourteenth Amendment. This Court, however, did squarely address the issue on August 14, 1985, more than two years before the arrest. In *Metcalf v. Long,* 615 F.Supp. 1108 (D.Del. 1985), now-Chief Judge Longobardi accurately sensed that *Garner* had altered the analytic landscape with regard to excessive force claims. Noting first that "[t]he applicable standard varies depending on which right is allegedly infringed," 615 F.Supp. at 1118, he went on to state that excessive force cases fell into three categories: 1) those involving excessive force to effectuate an arrest, 2) those involving the use of force against a person already in police custody and/or pretrial detention, and 3) those involving the use of force against a convicted individual. *Id.* at 1119. After quoting at length from *Garner,* he stated that "[a]nalysis under the fourth amendment is most appropriate when the complaint is specifically directed to *the method of arrest and seizure* of the person." *Id.* at 1120 (emphasis supplied). Custody and detention cases were subject to Fourteenth Amendment substantive due process analysis, while post-trial imprisonment cases were examined in light of the Eighth Amendment. Thus, if *Garner* alone had not made it clear that the Fourth Amendment reasonableness approach would be used in the District of Delaware, *Metcalf* extinguished all doubt.

It is true that only in 1989 did the Supreme Court explicitly hold that all claims of excessive force—deadly or not—in the course of an arrest should be analyzed under the Fourth Amendment "reasonableness" standard instead of the "due process" standard. *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). One might conclude from this that the Fourteenth Amendment due process standard prevailed at the time of Ospina's arrest. This is wide of the mark. First, as we have already noted, *Garner* and published precedent from this Court had left virtually no doubt that Fourth Amendment analysis applied to allegations of excessive force during an arrest. Second, the Supreme Court implied as much in *Graham v. Connor* itself, commenting that

> [w]here, as here, the excessive force claim arises in the context of an arrest ... of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons ... against unreasonable ... seizures' of the person. This much is *clear* from our decision in *Tennessee v. Garner....*

109 S.Ct. at 1871 (emphasis added). The Court thus felt that the 1985 *Garner* opinion had made it "clear" that the Fourth Amendment guided resolution of these issues. There can be no doubt, then, that a

reasonable policeman would have looked to Fourth Amendment standards in determining whether the amount of force applied in an arrest was lawful, not to due process standards derived from the Fourteenth Amendment.[1]

■ Determining whether force used to effect an arrest is reasonable under the Fourth Amendment requires the court to balance the nature and quality of the intrusion on the arrestee's Fourth Amendment interests against countervailing government interests. *Graham*, 109 S.Ct. at 1871. Indeed, the policeman's right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat to effect it. *Id.* at 1871. Since reasonableness is not capable of precise definition or mechanical application, the court's inquiry is conducted in light of all the circumstances of a given case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 1871–72. This analysis must proceed from the perspective of a reasonable officer on the scene, not with the 20/20 vision of hindsight, and must allow for "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 1872. On the other hand, it is inappropriate to take into account the arresting officer's subjective motivations. Thus, his or her "good intentions" do not make an objectively unreasonable use of force constitutional. *Id.*

Unfortunately, Durnan's written submissions fail to discuss the qualified immunity issue in any detail; they instead mount a general attack on the factual basis for Ospina's claim. In his "Opening Memorandum of Points and Authorities" Durnan

asserts that "the record is still devoid of any factual basis upon which . . . a claim of . . . conduct rising to the level of a constitutional violation can be found." Def.Memo. ¶ 8. He then refers us to his opening brief filed in support of his original motion to dismiss the complaint. In the latter text Durnan argues that he could not possibly have used excessive force because, as he avers in his affidavit, he used no force at all. Def.Op.Br. at 17. He also alludes to the fact that Ospina's car contained "a large quantity of what appeared to be an illegal substance" that was later discovered to be cocaine. *Id.* Returning to his "Memorandum of Points and Authorities," Durnan states that the "unrefuted evidence, established through defendant's deposition testimony," shows that he "followed a well-established procedure in handcuffing plaintiff. Def.Mem. ¶ 17. He continues his "analysis" by asserting again that there is nothing in the record to suggest that the application of the handcuffs was a constitutional violation, and that Ospina "is unable to make a sufficient showing on several essential elements" of the constitutional claim. *Id.* ¶ 20. Without stating which elements of Ospina's claim are deficient, or even why Durnan is entitled to qualified immunity, Durnan invites us to "resolve" the issue. *Id.* ¶ 18.

Durnan misunderstands the nature and operation of a summary judgment motion. As noted above, we are required to accept Ospina's version of the facts where there is a discrepancy. According to Ospina's sworn affidavit, Durnan not only applied force, but used so much force that Ospina felt excruciating pain. This injury, states Ospina, has led to continuing serious medical problems for which he has been forced to obtain treatment. Durnan does not dispute that Ospina posed no immediate threat to the safety of any person, did not resist arrest, and did not attempt to flee.

---

1. Just seven months before the *Graham* decision was handed down, the Third Circuit alluded to, but did not apply, the Fourteenth Amendment due process analysis. *Edwards v. City of Philadelphia*, 860 F.2d 568, 573 (1988). Because we must scrutinize what a reasonable police officer would have known of the law on excessive force on October 21, 1987, this case is irrelevant. *See also U.S. v. Messerlian*, 832 F.2d 778, 790 n. 20 (3d Cir.1987) (reviewing conviction under 18 U.S.C. § 242), *cert. denied*, 485 U.S. 988, 108 S.Ct. 1291, 99 L.Ed.2d 501 (1988).

Given Ospina's version of the facts in dispute, we cannot say that a reasonable person might not believe that the application of the force during the handcuffing was excessive. As noted above, Ospina posed no threat to safety, was not resisting arrest, and was not attempting to flee. These were not "tense, uncertain, and rapidly evolving" circumstances. *Graham,* 109 S.Ct. at 1872. Durnan did suspect Ospina of transporting drugs, but does not now claim that any unusual maneuvers were necessary to handcuff him. Therefore, while we have held that qualified immunity is theoretically available to officers who are alleged to have applied excessive force during a handcuffing, we cannot conclude, after viewing the facts of this case in the light most favorable to Ospina, that Durnan has met his burden of showing that he is entitled to summary judgment with regard to qualified immunity.

## II. *Negligence: Absence of Causation*

█ In our earlier opinion we declined to grant Durnan's motion to dismiss Ospina's negligence claim because he had pled the basic elements of negligence. 749 F.Supp. at 581. We also denied Durnan's motion to dismiss under the Delaware Tort Claims Act because Ospina had alleged facts which could show the presence of either gross or wanton negligence, both of which could prevent Durnan from enjoying immunity under the Act.

In the present motion for summary judgment, Durnan resurrects only the first of these arguments by asserting that Ospina has presented no factual evidence that the handcuffing *caused* the injuries he now claims. Durnan recognizes that under Delaware law negligence issues are "not generally susceptible of summary judgment adjudication." *Caine v. New Castle County,* 379 A.2d 1112 (Del.Super.1977). Summary judgment may be granted when only "one conclusion can be drawn from undisputed material facts." *Id.* at 1116. Having reviewed the relevant portions of the

record, we find that there are material issues of fact pertaining to the timing and nature of the cause of Ospina's alleged injury. For this reason, we cannot say that only one conclusion can be drawn. Rather, if the disputed facts are construed in Ospina's favor, one could reasonably conclude that his injury was caused by the handcuffing.

## III. *Conclusion*

For the reasons stated above, defendant Durnan's motion for summary judgment is DENIED. An appropriate order will follow.