**Otto K. SCHWAB, Plaintiff,**

v.

**Mark A. WOOD, Katherine Beck and Richard Dennis, Defendants.**

**Civ. A. No. 88–657 MMS.**

United States District Court,
D. Delaware.

June 12, 1991.

Douglas A. Shachtman of Douglas A. Shachtman & Associates, Wilmington, Del., for plaintiff.

David A. White, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

The plaintiff, Otto Karl Schwab, filed a complaint pursuant to 42 U.S.C. § 1983 against three Delaware State troopers in their individual capacity.[1] The complaint contains allegations of four civil rights violations: false arrest, excessive force during the course of the arrest, an illegal search and seizure of property following the arrest and malicious prosecution. In addition, the complaint contains two pendent state law claims for assault and battery and malicious prosecution. The court's jurisdiction rests upon 28 U.S.C. § 1343. The litigants have filed cross motions for summary judgment which will be granted in part and denied in part.

### I. *Factual Background*

The plaintiff is a long distance truck driver, residing in Florida. On the night of November 28, 1986, Schwab arrived at the Delaware Truck Plaza on Route 13, south of Wilmington, at approximately 7:00 p.m. Schwab ate and rested at the truck plaza until approximately 11:00 p.m. At that time, Schwab decided to go to sleep in the sleeping compartment behind the driver's seat of his tractor trailer. He set his alarm clock for 3:00 a.m. both to wake up another truck driver, Robert Mote, and enable himself to wash some clothes at the laundry facilities of the truck plaza.

At three o'clock, Schwab awoke, left the sleeping compartment behind the driver's

---

**1.** Plaintiff's complaint also sets forth claims against the defendants in their official capacity. Plaintiff withdrew these claims in open court during the course of oral argument on cross-motions for summary judgment.

seat, lit a cigarette, switched on the overhead light in the driving compartment of his truck, and began to put on his clothing. At that moment, defendant Mark Wood, a Delaware State trooper stationed out of State Police Troop 9, arrived in front of Schwab's tractor trailer in an unmarked police car. Wood was patrolling the area near the truck plaza because of complaints concerning the high number of prostitutes who ply their wares among truck drivers resting at the truck plaza.

When Schwab put on the overhead light, Wood observed him putting on his clothes and suspected that Schwab might be with a prostitute. After parking his car about twenty yards in front of Schwab's truck, Wood trained his high power mag light into the cab of Schwab's tractor trailer. Wood could see Schwab's face and determine that he was a white male; however, Wood did not see anyone else in the cab.

While the mag light was being directed into the cab, Schwab could neither identify Wood's vehicle as a police car nor see who was in the vehicle. Schwab attempted to find out who had shone the mag light into his cab by putting on his headlights and then the spotlight of his truck. However, Schwab was not able to identify Wood as a police officer. Wood later admitted that, given the circumstance, Schwab could not have determined the identity of anyone in Wood's car until its occupant exited the vehicle.

After a moment or two, Wood was satisfied that there was no one else in the cab and that there was no other reason to investigate. Wood drove away and circled the parking lot. Schwab again fixed his spotlight on Wood's car in another attempt to determine his identity. This action brought Wood back to Schwab's truck. Wood circled back and parked about five to ten feet in front of Schwab's truck, thereby blocking Schwab from driving away.

At this point, Robert Mote was on his way to Schwab's truck. Wood asked Mote to ask Schwab if anything was wrong. Mote inquired on behalf of Wood, and then relayed the message that nothing was amiss, that Schwab was a truck driver and that he was about to do his laundry. Wood then asked Mote to ask Schwab to step down from his truck and produce identification. Mote relayed this second message. A few moments later, Wood began to communicate directly with Schwab.

Wood's deposition testimony is to the effect that, after his initial investigation with the mag light and before his direct communication with Schwab, he did not suspect that Schwab was engaged in criminal activity. Rather, Wood expressed a vague suspicion of criminal activity. *See* Dkt. 51A at p. A62. Wood testified that he thought (a) there might be something wrong with Schwab, (b) there might be someone in the cab holding Schwab hostage and that Schwab was trying to communicate to him, or (c) Schwab might have some sort of message for Wood. Wood also felt that Schwab's actions were in some way "wrong" because by shining his spotlight on Wood's car, Schwab heightened Wood's visibility in a place where, in Wood's view, illegal activity takes place with some frequency. Even after Wood commenced direct communications with Schwab, nothing Schwab said provided Wood with any grounds to believe that Schwab himself was involved in criminal activity. *See* Dkt. 51A at p. A50 to A60. In his deposition testimony, Wood also described himself as "curious" as to why Schwab fixed his spotlight on him a second time. Dkt. 51A at p. A60.

Wood requested that Schwab turn over his driver's license, registration and any other identification. Schwab asked for a reason and said that he had done nothing wrong. Thereafter, Schwab called down to Mote, suggesting that they go off together for coffee. The ensuing events are subject to some dispute. Schwab recalls Wood as replying that Schwab wasn't going anywhere and pulling his car closer to the front of Schwab's truck in order to prevent Schwab's departure. Wood states that he did not move his vehicle after his initial exit.

When Wood repeated his requests to Schwab, Schwab told Wood that he did not have any business in the parking lot and

that he had a right not to produce identification. Both parties agree Schwab refused to get out of the truck or produce identification unless Wood gave him an adequate reason. Wood recalls five requests to Schwab that he produce identification and get out of the truck; however, Wood never told Schwab why he wanted to question him.

In his deposition testimony, Wood claimed that he continued to be concerned that Schwab might be held hostage or in some other form of danger. Schwab's recollection was that when he said he would not produce identification unless Wood told why he wanted it, and that he had constitutional rights, Wood responded "in the state of Delaware, you don't have any f—ing rights."

After ten minutes of this battle of wills, Wood no longer felt comfortable being alone in the Truck Plaza. He requested backup because of what he viewed as Schwab's stubbornness and refusal to cooperate.

Delaware State Trooper Katherine Beck [2] arrived about one minute after receiving Wood's request for assistance. According to Beck's testimony, Wood informed Beck that Schwab had spotlighted his car, refused to produce identification or to exit the truck, and that he was using profanity. Beck claimed that she could hear Schwab still using profane language. Also according to Beck's testimony, upon the arrival of Delaware State Trooper Richard Dennis, Wood told both Beck and Dennis that Wood believed there was a prostitute in the truck due to the fact that Schwab was seen putting on his clothes in an area of high concentration of prostitutes. Dkt. 49A at pp. 71, 75.

At this point, Beck climbed up on the driver's side of the truck, and Dennis went around to cover the passenger door. Beck claims that Schwab continued to use profane language. In order to coax Schwab to come out of the truck, Beck used her blackjack to hit the window several times. Beck's intention was to make Schwab believe that she would break the window if Schwab did not exit the truck. She was successful. Fearing that Beck would break the window, Schwab unlocked and opened the door of his truck.

What happened next is subject to further dispute. Beck maintains that Schwab then jumped down from the truck to the ground, Dkt. 49A at p. 66, a distance of about four and one-half feet. Schwab contends that upon his opening the door, Wood grabbed Schwab by the ankles and pulled him out of the cab and onto the dirt ground. Wood recalls that Schwab still refused to come out of the truck, and that after pulling on Schwab's ankles, both men tumbled to the ground. In the police report and force report,[3] Wood reported that Schwab was pulled out of the truck with each of the three officers grabbing a part of Schwab's body. See Dkt. 51A at p. A–82 and p. A–84. Dennis claims that he was on the other side of the truck all throughout this episode.

Schwab's head struck the ground. Wood recalls that a brief struggle occurred while Schwab was being handcuffed. In his opening brief (Dkt. 51), Schwab asserts that Beck hit him with her blackjack and then Wood handcuffed him; however Schwab's deposition testimony is vague as to when the alleged blackjacking took place. Schwab also contends that Wood sat on top of him, poking him and asking Mote, "What kind of f—ing foreigner is this?"[4] When Mote asked what Wood was going to do to Schwab, Schwab recalls Wood's answer as "You better f—ing shut your mouth or you'll end up the same way." Schwab was unable to observe whether Dennis was present while he was being handcuffed or during the alleged hitting. Schwab was then placed into the passenger seat of Wood's car.

2. At the time of the incident, Katherine Beck's surname was Weber.

3. Delaware state troopers file a force report whenever force is used in the apprehension of a suspect.

4. Schwab was born in Germany and speaks with a German accent.

Schwab recalls blood running down his face, a condition denied by the officers. However, Wood does recall repeatedly asking Schwab if he wanted medical attention when Schwab complained of a headache.

After Schwab was placed in the police car, Dennis, Beck and possibly Wood then searched Schwab's truck and found no one else in the cab. However, they did come across a thirteen inch knife lying exposed on the floorboard near the center console of the cab.

Wood drove Schwab to State Police Troop 9 to interview Schwab and prepare paperwork and warrants before traveling to Justice of the Peace ("J.P.") Court 11. Schwab refused to cooperate during the interviews. Wood also prepared a force report describing his use of force against Schwab. Schwab again refused any offers of medical attention.

At J.P. Court 11, Schwab had his initial appearance presumably on the resisting arrest and possession of a concealed deadly weapon charges. Around 8:30 the next morning, Schwab's dispatcher posted bail and took Schwab to St. Francis Hospital where he was x-rayed and a cat scan was performed. Among other things, Schwab complained of a "cracked skull" and a pain in his left lung. The next day, Schwab encountered difficulty breathing and went back to the hospital. More x-rays were taken and Schwab was given pain killers.

On December 16, 1986, the Delaware Court of Common Pleas dismissed the charge of carrying a concealed, deadly weapon at the preliminary hearing stage. Schwab recalls that the dismissal of the concealed weapon charge angered Wood, *see* Dkt. 51A at p. A–32, and that Wood threatened to "take" Schwab to the Superior Court for resisting arrest.[5] In Superior Court Wood agreed that there were no grounds for charging Schwab for resisting arrest and that the charge should be amended to resisting detention. At the close of all the evidence, the Delaware Superior Court granted Schwab's motion for judgment of acquittal on the resisting de-

tention charge because Wood did not have a reasonable suspicion that Schwab was committing or had committed a crime. *See* Dkt. 51A at p. A–70.

## II. *Summary Judgment Standard*

A court will render summary judgment to the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Upon the moving party's discharge of this burden, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)). *See also Williams v. Borough of West Chester*, 891 F.2d 458, 464 (3d Cir.1989).

The requirement is that there is no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Substantive law identifies which facts are "material" and only disputes over facts that "might affect the outcome of the suit under the governing law" will defeat summary judgment. *Id.* A factual dispute is "genuine" if a reasonable jury could return a verdict for the non-movant. *Id. See Williams v. Borough of West Chester*, 891 F.2d at 460–61 (non-movant must produce more than mere scintilla of evidence to successfully oppose summary judgment). Doubts concerning the existence of genuine issues of material fact will be resolved against the movant. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 900 (3d.Cir.1987), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). At the summary judgment stage, a judge's function is merely to determine whether there is a genuine issue of fact for trial or whether the evidence is so one-sided

---

5. Notwithstanding Schwab's deposition testimony, it appears from the truncated record that the resisting arrest charge was already being processed through the criminal justice system.

that one party should prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12. The judge should not weigh the evidence or determine the truth of any matters in dispute. *Id.* at 252, 106 S.Ct. at 2512. In considering a summary judgment motion, the court should ignore disputed facts that are not material to the issues presented on summary judgment. *Jones v. Town of Seaford, Delaware*, 661 F.Supp. 864, 870 (D.Del.1987).

"The filing of cross-motions for summary judgment does not require the Court to grant summary judgment for either party." *Krupa v. New Castle County*, 732 F.Supp. 497, 505 (D.Del.1990) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987)). This is because each party may base its motion on different legal theories involving different material facts. *Id.* at 506. Further, different reasonable inferences may be drawn from the same facts. When there are no genuine issues of material fact and no conflicting inferences, the court may render summary judgment as a matter of law. *Beattie v. D.M. Collections, Inc.*, 754 F.Supp. 383 (D.Del.1991).

III. *Section 1983*

42 U.S.C. § 1983 states:

Every person who, under the color of any statute, ordinance, regulation, custom or usage of any State or Territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The initial inquiry in a section 1983 action focuses on two issues: 1) whether the conduct complained of was committed by a person acting under the color of state law; and 2) whether this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (*Parratt* overruled to the extent that it holds negligent conduct by state official is actionable under section 1983). Section 1983 does not provide any substantive rights; rather it provides only a remedy for violations of other rights. *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617–18, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979).

The parties do not contest that the "under color of state law" requirement was met in this case. Defendants were Delaware state employees acting under state authority.

Schwab's section 1983 claims consist of four constitutional violations: 1) false arrest; 2) excessive force; 3) illegal search; and 4) malicious prosecution. Each will be discussed separately below.

A. False Arrest

Schwab alleges his initial detention and subsequent arrest violated his rights under the fourth and fourteenth amendments since there was no reasonable suspicion much less probable cause that Schwab was engaged in any criminal activity.[6] The Third Circuit Court of Appeals has acknowledged the right of a plaintiff to sue for false arrest under 42 U.S.C. § 1983. *Patzig v. O'Neil*, 577 F.2d 841, 848 (3d Cir.1978) ("[c]learly an arrest without probable cause is a constitutional violation actionable under section 1983.").

Schwab maintains that (1) collateral estoppel precludes Wood from relitigating the reasonable suspicion issue; and (2) without even considering the state court determination of the reasonable suspicion issue, Wood did not have a reasonable suspicion that Schwab was involved in criminal

---

**6.** The guarantee against unreasonable searches and seizures found in the fourth amendment has been made applicable to the states by reason of the due process clause of the fourteenth amendment. *Wolf v. Colorado*, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949); *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

activity. Defendants contest both propositions.

### 1. *Collateral Estoppel*

Schwab's first ground in support of his motion for summary judgment is that the defendants are collaterally estopped from relitigating whether Wood had a reasonable suspicion that Schwab was engaged in criminal activity. While Wood was not a party to the state criminal proceeding, Schwab maintains that Wood was in privity with the State of Delaware by virtue of his participation in filing charges, his working in concert with the state prosecutor and his testimony during the state criminal proceeding.

■ The doctrine of collateral estoppel may be applied in a section 1983 suit to preclude relitigation of a federal constitutional issue decided in a state court proceeding. *Migra v. Warren City School District,* 465 U.S. 75, 82–3, 104 S.Ct. 892, 896–97, 79 L.Ed.2d 56 (1984); *Allen v. McCurry,* 449 U.S. 90, 96–105, 101 S.Ct. 411, 415–20, 66 L.Ed.2d 308 (1980). However, unlike the foregoing precedents, in this instance, Schwab wants to apply the doctrine offensively. Offensive collateral estoppel occurs when a plaintiff seeks to estop a defendant from relitigating issues which the defendant previously unsuccessfully litigated in a prior action. Some federal courts have applied the offensive use of collateral estoppel within the context of a section 1983 suit. *See Benjamin v. Coughlin,* 905 F.2d 571, 575 (2d Cir.1990); *Patzner v. Burkett* 779 F.2d 1363, 1369 n. 7 (8th Cir.1985) (the application of collateral estoppel offensively as alternative basis for the holding); *Farley v. North Bergen Township Board of Education,* 705 F.Supp. 223, 228 (D.N.J.1989). However, courts have generally declined to permit the offensive use of the doctrine when a section 1983 plaintiff attempts to rely upon an acquittal or dismissal in a prior criminal prosecution in order to bind a defendant in the subsequent civil suit. *See Duncan v. Clements,* 744 F.2d 48 (8th Cir.1984); *Warren v. Byrne,* 699 F.2d 95 (2d Cir.1983); *Davis v. Eide,* 439 F.2d 1077, 1078 (9th Cir.1971), *cert. denied,* 404 U.S. 843, 92 S.Ct. 139, 30 L.Ed.2d 78 (1971); *Griffin v. Strong,* 739 F.Supp. 1496, 1503 (D.Utah 1990); *Spartacus Youth League v. Board of Trustees,* 502 F.Supp. 789 (N.D.Ill.1980).

■ The statutory directive of 28 U.S.C. § 1738 compels a federal court to provide the same preclusive effect to a state court determination as that determination would be given in the courts of the state where the judgment emerged.[7] *See Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1981). A federal court, in determining the collateral estoppel effect of a state court proceeding, should apply the law of the state where the criminal proceeding took place. *Anela v. City of Wildwood,* 790 F.2d 1063, 1068 (3d Cir.1987), *cert. denied,* 479 U.S. 949, 107 S.Ct. 434, 93 L.Ed.2d 384 (1986). Due process considerations also compel a federal court to ascertain whether the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue decided in the state court. *Id.* In the event a party did not have a full and fair opportunity to litigate the issue in the prior proceeding, collateral estoppel cannot be asserted offensively against him.

### a. Collateral Estoppel Under Delaware Law

■ Delaware law provides that in order to invoke collateral estoppel, there must be a determination of an issue essential to a final judgment which precludes relitigation of that issue in a subsequent suit on a different cause of action between the same parties or persons in privity with them. *Tyndall v. Tyndall,* 238 A.2d 343, 346 (Del. 1968); *Foltz v. Pullman, Inc.,* 319 A.2d 38, 40 (Del.Super.Ct.1974). The requirement of privity becomes relevant only when col-

---

7. The pertinent portion of 28 U.S.C. § 1738 provides:

Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

lateral estoppel is asserted against one who was not a party to the prior suit. *Coca–Cola Co. v. Pepsi Cola Co.*, 36 Del. 124, 172 A. 260 (1934); *Foltz*, 319 A.2d at 41. If the parties to the subsequent suit are not identical to those of the first suit, the prior litigation will have collateral estoppel effect only if the party against whom collateral estoppel is asserted was in privity with a party to the earlier suit. *Foltz, supra.* Delaware law defines "privy" as "a person who was not a party but whose interest in the action was such that he will be bound by the final judgment as if he were a party." *Id.*

■ While research has produced no cases addressing the privity of police officers with the State of Delaware in a criminal proceeding, the court does not believe that Wood or the other defendants were in privity with the State of Delaware. They did not have an interest which was bound by the previous proceeding. Moreover, they simply had no direct personal interest whatsoever in the state criminal proceeding against Schwab. *See Davis v. Eide*, 439 F.2d 1077, 1078 (2d Cir.1971). The interests of the State of Delaware in a criminal proceeding are not identical to those of an individual officer, such as Wood. In a different context, the Supreme Court has noted: "[T]he purpose of a criminal court is not to provide a forum for the ascertainment of private rights. Rather, it is to vindicate the public interest in the enforcement of the criminal law while at the same time safeguarding the rights of the individual defendant." *United States v. Standefer*, 447 U.S. 10, 25, 100 S.Ct. 1999, 2008, 64 L.Ed.2d 689 (1980), *quoting United States v. Standefer*, 610 F.2d 1076, 1093 (3d Cir. 1979).

The only purpose of Wood's involvement in the state criminal proceedings was to help the State convict Schwab of his alleged crimes. Further, the roles of the parties have substantially changed as compared to those in the previous state criminal proceeding. To illustrate the disparity of interests in these two proceedings, *Trooper* Wood has become *defendant* Wood, and *criminal defendant* Schwab is now *civil plaintiff* Schwab. *See Griffin v. Strong*, 739 F.Supp. 1496, 1502–03 (D.Utah 1990).

Schwab argues that Delaware's approval of offensive collateral estoppel bars the defendant from litigating reasonable suspicion in this case. It is true Delaware state courts have approved the use of offensive collateral estoppel. *See Chrysler Corp. v. New Castle County*, 464 A.2d 75, 82 (Del. Super.1983). However, this does not change the analysis. While Delaware jurisprudence now encompasses the doctrine of offensive collateral estoppel, Delaware has not abandoned the requirement of privity. *See Chrysler Corp.* at 81, *quoting Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (offensive collateral estoppel can serve to protect litigants "from the burden of relitigating *an identical issue with the same party or his privy....*") (emphasis added). Since there is no privity between the State of Delaware in the prior criminal proceedings and the defendants in this section 1983 case, Schwab cannot use the determination of the Superior Court to estop them from litigating the issue of reasonable suspicion.

### b. Collateral Estoppel—Full and Fair Opportunity to Litigate

■ Assuming, *arguendo*, there was privity, Schwab cannot invoke collateral estoppel against the defendants because defendants did not have "full and fair opportunity to litigate." In *Parklane Hosiery*, the Supreme Court held collateral estoppel can be applied against a party who in the earlier case had a full and fair opportunity to litigate the issue to be precluded. 439 U.S. at 332–33, 99 S.Ct. at 652–53. *See also Allen v. McCurry*, 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *Anela v. City of Wildwood*, 790 F.2d 1063, 1068 (3d Cir.1986), *cert. denied*, 479 U.S. 949, 107 S.Ct. 434, 93 L.Ed.2d 384 (1986) (a federal court should ascertain whether the party had a full and fair opportunity to litigate the issue to be precluded in the prior state criminal proceeding); *Glictronix Corp. v. American Telephone and Telegraph Corp.*, 603 F.Supp. 552, 574 (D.N.J.1984).

The defendants did not have a full and fair opportunity to litigate the reasonable suspicion issue in the prior state proceeding. They had no control over nor did they substantially participate in the control of the state's presentation of its case. *See Restatement (Second) of Judgments* § 39 (1982). During the state criminal proceeding, the prosecutor represented the State of Delaware, not the defendants. Further, the defendants had no opportunity to engage in any discovery or assert any defense which could shield them from civil liability arising from this proceeding. *See Garza v. Henderson,* 779 F.2d 390, 394 (7th Cir.1985).

Finally, in most instances there is no right of appeal by the state when it fails to obtain a criminal conviction. "The estoppel doctrine, however, is premised upon an underlying confidence that the result achieved in the initial litigation was substantially correct. In the absence of appellate review, or of similar procedures, such confidence is often unwarranted." *Standefer v. United States,* 447 U.S. at 23, n. 18, 100 S.Ct. at 2007, n. 18. While I can think of no set of facts which would justify the offensive use of collateral estoppel where there has been a dismissal or acquittal in a criminal proceeding, the court will not formulate a per se rule because the Supreme Court has declined to do so. *Id.*

For these reasons, the court finds that the defendants are not collaterally estopped from litigating the issue of reasonable suspicion for Schwab's detention.

### 2. *Wood's Reasonable Suspicion of Criminal Activity*

Alternatively, Schwab contends that even without considering the judgment of the Delaware Superior Court, he is nonetheless entitled to summary judgment. He argues the record demonstrates Wood had no reasonable suspicion that Schwab was involved with criminal activity, and therefore, there was no probable cause for his arrest for resisting detention. Wood, Dennis and Beck reply that they did not violate Schwab's constitutional rights because there was reasonable suspicion to detain Schwab and that his refusal to be detained justifies his arrest for resisting detention.[8] Thus, both sides correctly argue the linchpin is the presence or absence of reasonable suspicion.

The Supreme Court has recognized that in some circumstances, a police officer may detain a suspect briefly for questioning although he does not have probable cause to believe that the suspect is involved in criminal activity, as required for a traditional arrest. *Brown v. Texas,* 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979); *United States v. Brignoni–Ponce,* 422 U.S. 873, 880–881, 95 S.Ct. 2574, 2579–80, 45 L.Ed.2d 607 (1975). Under these circumstances, a police officer must have a reasonable suspicion, based on objective facts, that the individual detained is involved in criminal activity. *Brown v. Texas, id.; Delaware v. Prousse,* 440 U.S. 648, 654–655, 99 S.Ct. 1391, 1396–97, 59 L.Ed.2d 660 (1979); *United States v. Brignoni–Ponce,* 422 U.S. at 882–83, 95 S.Ct. at 2580–81. To determine whether an officer's suspicions are reasonable, the court must look at the facts specific to the case and weigh the extent of the intrusion against the law enforcement reasons for the detention. *Metcalf v. Long,* 615 F.Supp. 1108, 1114–15 (D.Del.1985).

Ordinarily, a civil case involving an issue of probable cause, and by extension, reasonable suspicion, must be resolved by the factfinder. *See generally Deary v. Three Un–Named Police Officers,* 746 F.2d 185 (3d Cir.1984). However, "where no genuine issue as to any material fact exists and

---

**8.** In addition to the concealed deadly weapon charge under 11 *Del.C.* § 1442, Schwab was arrested for violating 11 *Del. C.* § 1257, which provides that a person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer from effecting a detention of himself. Under Delaware law, a police officer may stop any individual abroad or in a public place, whom the officer has "reasonable ground to suspect is committing, has committed or is about to commit a crime, and may demand of him his name, address, business abroad and where he is going." 11 *Del. C.* § 1902(a). When a police officer makes these requests, "[a]ny person who fails to identify himself or explain his action to the satisfaction of the officer may be detained and further questioned and investigated." 11 *Del.C.* § 1902(b).

where credibility conflicts are absent, summary judgment may be appropriate." *Id.* at 192. Here, while facts are in dispute and there are credibility conflicts, there are none which go to the issue of whether Wood had a reasonable suspicion on which to detain Schwab. Wood himself testified that he had no suspicion that Schwab was committing a crime:

Q. Now, Officer Wood, would you agree with the Superior Court judge that in order for someone to be guilty of resisting arrest, that there must be grounds to arrest the person.

A. I agree.

Q. And would you agree with him that in order for there to be grounds for resisting detention, there must have been reason to detain him.

A. I agree.

Q. The point when you wanted to detain Mr. Schwab was after you drove up to his tractor-trailer the second time; is that correct?

A. That is true.

Q. And it was after he refused to produce identification to you or get out of the tractor-trailer.

A. Yes.

Q. And at that time, you had no suspicion that he had violated any motor vehicle law; is that correct?

A. That is true.

Q. And you had no evidence or reason to believe that he had broken any other Delaware law; is that right?

A. Not to my knowledge, until I had spoken with him.

Q. Well, speaking to him did not give you any ground for believing that he violated a Delaware law, did it?

A. That is true. No.

Q. *So therefore, at that time, you had no ground to detain him; is that correct?*

A. *That is true.*

Q. You were just curious as to why he was shining a light back at you the second time; is that right?

A. That is my basis, yes.

Q. Did you ever ask him that question?

A. Yes, I did. I do recall asking him why was the light shined on my vehicle.

Q. And what did he say?

A. I don't recall.

Q. Did Mr. Schwab ever indicate to you that he wanted to report anything to you that was happening in the Truck Plaza?

A. Not that I can recall.

Dkt. 51A at pp. A59–A60 (emphasis added). At best, Wood had some unarticulated suspicion that some unknown, unseen person might have been in the process of committing a crime, Dkt. 49A at p. 51, and a complaint that Schwab put Wood in immediate danger because of Schwab's use of his spotlight. Dkt. 51A at p. A–57. With respect to the latter, Wood went on to state that Schwab's shining of his spotlight on Wood was not illegal and could not be a basis for an arrest. Dkt. 51A at pp. A62–A63.

In fact, Wood testified unequivocally that the basis for the resisting charge was Schwab's refusal to provide identification:

Q. The basis for the resisting charge was that he would not provide you with identification or get out of the tractor-trailer.

A. Yes.

Q. And that is the sole basis for the resisting charge.

A. Yes, it is.

Dkt. 51A at p. A47.

From the preceding it is inescapable that according to Wood's own testimony that at the time of the detention Wood had some vague feeling there might be some unknown criminal activity by someone other than Schwab. Wood had no reasonable suspicion that Schwab was engaged in criminal activity. Finally, from Wood's testimony he detained Schwab not because of a suspicion that Schwab was involved in criminal activity, but because Schwab refused to answer questions, provide identification or get out of the cab. Yet, Wood's right to cooperation from Schwab must be preceded by Wood having a reasonable suspicion that Schwab was involved in criminal

activity. Wood had conceded he had no such suspicions, reasonable or otherwise.

Absent reasonable suspicion, there was no legal basis for the detention and subsequent arrest of Schwab. Consequently, it is held a false arrest did occur. Whether any of the parties is entitled to summary judgment on the false arrest claim is dependent upon whether any defendant prevails on the defense of qualified immunity. *See* Section IV. B., *infra.*

### B. Excessive Force

Schwab asserts that the defendants violated his fourth amendment rights since they were not entitled to use any force to detain him because Wood had no reasonable suspicion of Schwab's involvement in criminal activity. In the alternative, Schwab contends that the use of force against him was excessive given that Schwab was not fleeing, threatening the officers or resisting them. Lastly, Schwab maintains that all three defendants, regardless of which one beat him, are liable since a police officer who is present at the summary physical punishment of a suspect and who does not prevent such punishment will be liable for the suspect's injuries.

Wood, Beck and Dennis have moved for summary judgment on the grounds that the officers use of force was reasonable and did not amount to a violation of any federally protected rights. Beck and Dennis also move for summary judgment on the excessive force claim, contending that Schwab has not established sufficient personal involvement to entitle him to relief against these two officers.

It has been recognized that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). With regard to excessive force claims, the Supreme Court has held that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the

Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.*

In applying this objective standard, the Court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" and any governmental interests. *Id., quoting United States v. Place*, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983). The reasonableness standard employed in such cases is objective and entails analysis of the facts of each particular case including the severity of the alleged crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight. *Graham, Cooper v. Merrill*, 736 F.Supp. 552 (D.Del.1990).

 Schwab contends that since the defendants were not entitled to detain him, any use of force would have been excessive. The court agrees. A person enjoys the right to be free from applications of force by a police officer which exceed that which is reasonable or necessary under the circumstances. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). When a police officer has no reasonable suspicion to detain an individual, the government's interest in any form of intrusion, let alone the use of force, is nil. Consequently, all uses of alleged force against Schwab present in this record violate the fourth amendment. Whether any of the defendants may avoid personal liability for the excessive force claim will depend upon whether they are entitled to qualified immunity. See Section IV. C., *infra.*

### C. Illegal Search

Schwab asserts that the search of his truck after his arrest was a violation of his fourth amendment right against unreasonable searches since his arrest for resisting detention was unlawful. Wood, Beck and Dennis contend that there was no constitutional violation since they were entitled to search Schwab's truck after completing a lawful arrest of Schwab.

When a law enforcement officer makes a lawful custodial arrest of the occupant of an automobile, the officer may search the passenger compartment of that automobile as a contemporaneous incident of that arrest. *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (police officers who have detained but not arrested the driver of an automobile may search those parts of the passenger compartment where a weapon may be hidden); *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). Clearly, the lawfulness of the search of Schwab's car is dependent upon there being a lawful detention. As previously discussed, Schwab's detention and arrest failed to pass constitutional muster because Wood had no reasonable suspicion of Schwab's involvement in criminal activity. Consequently, the court holds that the search of Schwab's truck constitutes a violation of the fourth amendment.

The record reveals that Beck and Dennis claim they alone searched the truck after Schwab's arrest. During his testimony before the Court of Common Pleas, Wood stated that he participated in the search. It follows there is a genuine issue of material fact as to whether Wood was involved in the search. The summary judgment motions of Schwab against Wood and Wood against Schwab will be denied because there is a material issue of fact as to whether Wood participated in the search. Whether Schwab is entitled to summary judgment against Beck and Dennis is dependent upon whether they are entitled to qualified immunity. *See* Section IV. D., *infra*.

### D. Malicious Prosecution

Schwab contends that the criminal charges brought against him were not based upon probable cause because Wood did not have a reasonable suspicion that Schwab was involved in criminal activity. Schwab argues the charges were brought against him to enable Wood to retaliate for Schwab's refusal to identify himself and to vent Wood's ethnic antipathy towards Schwab. In so doing, Schwab maintains Wood deprived him of due process under the fifth and fourteenth amendments and equal protection under the fourteenth amendment, violated Schwab's fourth amendment rights against unreasonable seizures, and penalized him for exercising his first amendment rights. Wood has moved for summary judgment urging Schwab's alleged inability to meet the criteria for a malicious prosecution claim under section 1983.

The Third Circuit Court of Appeals has held that a claim for the constitutional tort of malicious prosecution may be actionable under section 1983. *Lee v. Mihalich*, 847 F.2d 66 (3d Cir.1988); *Deary v. Three Un–Named Police Officers*, 746 F.2d 185, 194 n. 11 (3d Cir.1984) (applying Virgin Islands law); *Losch v. Borough of Parkesburg, PA*, 736 F.2d 903 (1984); *Jennings v. Shuman*, 567 F.2d 1213 (3d Cir.1977). *See also Rose v. Bartle*, 871 F.2d 331 (3d Cir. 1989); *Bussard v. Neil*, 616 F.Supp. 854, 856 (M.D.Pa.1985); *DiMaggio v. O'Brien*, 497 F.Supp. 870, 878 (E.D.Pa.1980).

The elements of a civil action for a section 1983 malicious prosecution claim under general law are set forth in *Lee v. Mihalich*, 847 F.2d at 70. Those elements are (a) the defendant initiate a criminal proceeding, (b) which ends in plaintiff's favor, (c) which was initiated without probable cause, and (d) the defendant acts maliciously or for a purpose other than bringing the defendant to justice. *Id.* at 69–70. There is an additional fifth element under Delaware common law, namely, the former criminal proceeding must have caused injury or damage. *Stidham v. Diamond State Brewery*, 41 Del. 330, 21 A.2d 283 (Super. Ct.1941); *Homlish v. Diamond Motor Sports, Inc.*, slip. op. No. 81C–OC–19 (Del. Super. February 8, 1984).

The parties concede that Schwab satisfied the first two criteria. With regard to the third criteria, the Third Circuit Court of Appeals has suggested that probable cause to commence a criminal prosecution by arrest or otherwise may mean something different from probable cause in the fourth amendment search and seizure context. *See Lee v. Mihalich*, 847 F.2d at 70, n. 6.

In *Lee,* a section 1983 malicious prosecution case, the appellate court stated the "1983 claim must include the elements of the common law tort as it has developed" and has looked both to general law and the law of the forum to determine whether the four criteria for a section 1983 malicious prosecution claim were satisfied. *Id.* at p. 70. Since the court has already determined that Wood did not have a reasonable suspicion to detain Schwab under the fourth amendment, further analysis will be conducted with respect to the Delaware common law of malicious prosecution to determine whether there was probable cause and malice.

Delaware law defines "probable cause" in the malicious prosecution context as a reasonable ground for suspicion or belief, supported by circumstances sufficiently strong in themselves, as to warrant a reasonably cautious and prudent person in the belief that the person accused is guilty of the offense with which he is charged. *Stidham,* 21 A.2d at 285. The Delaware state court also appears to have adopted the proposition that holding a person to answer criminal charges in the Superior Court is prima facie evidence of probable cause for institution of the criminal charge. This prima facie evidence may be rebutted. *Id.* Since Schwab was not only bound over, but forced to trial on the resisting detention charge, there has been a prima facie showing of probable cause for the institution of this charge. However, Wood has testified that he possessed no suspicion that Schwab was engaged in criminal activity. As a consequence, the prima facie showing of probable cause for instituting the resisting arrest charge has been rebutted. No reasonably cautious and prudent person could harbor a belief that Schwab was guilty of resisting detention.

It is uncontested that Schwab's knife was not concealed but was in plain view and Schwab was not bound over on the charge. Thus, Wood failed to make even a prima facie showing of probable cause to initiate the concealed deadly weapon charge. Therefore, no reasonably cautious and prudent person could find there was grounds to believe that Schwab was guilty of carrying a concealed, deadly weapon.

Actual malice is the fourth criteria for a section 1983 malicious prosecution action. *Lee v. Mihalich,* 847 F.2d at 70. *Plummer v. Collins,* 24 Del. 281, 77 A. 750 (Super. 1910) ("[b]oth malice and want of probable cause are required to bring an action for malicious prosecution."); *Homlish v. Diamond Motor Sports, Inc.,* slip. op. No. 81C–OC–19 (Del.Super. February 8, 1984). "For an act to have been done [with malice], the act must have been done with a *wrongful or improper motive* or with a *wanton disregard of the rights of that person against whom the act is directed.*" *Stidham,* 21 A.2d at 285 (emphasis added).

■ The record reveals a genuine issue of material fact as to Wood's malice towards Schwab. On one hand, Schwab contends that (1) Wood sarcastically declared that Schwab had no constitutional rights in the state of Delaware, (2) Wood referred to Schwab's nationality in an insulting fashion after Schwab's arrest and (3) Wood was infuriated at Schwab's not being bound over on the concealed weapon charge and declaring the resisting arrest charge would be pursued. Based on these events, a reasonable jury could conclude that Wood acted with a wrongful or improper motive or with a wanton disregard for Schwab's rights. On the other hand, Wood denies these events happened.

The record is sparse with respect to the extent, if any, of damages or injury suffered by Schwab by reason of institution of the criminal proceedings. However, there are inferences which can be gleaned from the record that Schwab was put to some expense in defending the charges.

Because of the genuine issues of material fact on the malice and injury or damages elements, the summary judgment cross-motions on the malicious prosecution claim will be denied.[9]

---

**9.** The complaint can be read as also charging Dennis and Beck with malicious prosecution. At oral argument, plaintiff stated he was not pursuing Dennis and Beck on the malicious prosecution charge.

## IV. Qualified Immunity

### A. Standard for Qualified Immunity

 State officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity protects government officials from personal costs of litigation and the inhibiting effect of potential litigation upon the discharge of their official responsibilities. *Lee v. Mihalich, supra*, at 69, citing *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The immunity is not absolute but rather balances the interest in allowing public officials to perform their discretionary functions without fear of suit against the public's interest in vindicating important federal rights. *Lee v. Mihalich, supra.* Qualified immunity is ordinarily an issue of law to be determined by the court on a motion for summary judgment; *Kirschling v. Lake Forest School District*, 687 F.Supp. 927, 936 (D.Del.1988), citing *Czurlanis v. Albanese*, 721 F.2d 98, 108 (3d Cir.1983). The defendants have the burden of establishing their immunity. *Losch v. Borough of Parkesburg*, 736 F.2d 903, 909 (3d Cir. 1984).

 In a qualified immunity analysis, the court must determine whether a reasonable person could have believed that the defendant's actions were lawful in light of clearly established law and information possessed by the defendant at the time of the incident. *Anderson v. Creighton*, 483 U.S. at 641, 107 S.Ct. at 3039; *Henry v. Perry*, 866 F.2d 657, 659 (3d Cir.1989) The right which the government official violated must be clearly established. *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039. A right is clearly established when the contours of that right existing at the time of the allegedly unlawful action were sufficiently clear such that a reasonable official would understand that his actions violate that right. *Id.* at 639, 640, 107 S.Ct. at 3038, 3039. In order for the governing law to be clearly established, it is not necessary that there exist a previous precedent on point. *Good v. Dauphin County Social Services for Children and Youth*, 891 F.2d 1087, 1092 (3d.Cir.1989). "'[S]ome but not precise factual correspondence' to precedent" is necessary in order for the defendant to be charged with knowledge with regard to the lawfulness of his actions. *Id., quoting People of Three Mile Island v. Nuclear Regulatory Commissioners*, 747 F.2d 139, 144 (3d Cir.1984). The court must use an objective standard and consider whether a reasonably competent public official in the defendants' position would have known of the rights violated. *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2738. In an action against a police officer, the standard is "a reasonably well trained officer in [the defendant's] position." *Malley v. Briggs*, 475 U.S. 335, 345, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986).

If Wood's, Beck's or Dennis's actions violated Schwab's constitutional rights, they would be nevertheless immune from personal liability if protected by qualified immunity. The pertinent inquiry is confined to the objectively ascertainable question of whether a reasonably well-trained officer would know that the arrest, use of force, search and pressing of criminal charges were illegal. In the event the court determines a reasonable jury could find a reasonably well-trained officer in the defendants' position would believe in the lawfulness of his actions under the circumstances, the court must grant the defendant's motion for summary judgment on the basis of qualified immunity.

### B. Qualified Immunity—The False Arrest Claim

The court's first inquiry is whether the law was established sufficiently in November 1986 such that a reasonably well-trained police officer would have known that his detention and arrest of Schwab was in violation of Schwab's constitutional rights. As discussed in Section III. A. 2. *supra*, it was clearly established in 1986 that a police officer violates the fourth amendment by detaining an individual with-

out a reasonable suspicion that the individual was involved in criminal activity. *Brown v. Texas*, 443 U.S. at 51, 99 S.Ct. at 2640; *Delaware v. Prousse*, 440 U.S. 648, 654–655, 99 S.Ct. 1391, 1396–97, 59 L.Ed.2d 660 (1979); *United States v. Brignoni-Ponce*, 422 U.S. at 882–83, 95 S.Ct. at 2580–81. *See also*, 11 *Del.C.* §§ 1902(a) and (b); *State v. Wrightson*, 391 A.2d 227 (Del.Super.1978). The second inquiry is whether, in light of the circumstances in the truck plaza and the information known to the defendants, a reasonably well-trained police officer would have known that his actions violated the fourth amendment.

■ The court will first direct this inquiry with respect to Wood. In the typical section 1983 case, this issue is usually presented in the context where a police officer asserts that he had reasonable suspicion of criminal activity and thereafter he presents objective facts substantiating his suspicion. In this case, however, Wood admits he had no reasonable suspicion of criminal activity on the part of Schwab. As a consequence, the court holds that no reasonable jury could conclude that a reasonably well-trained police officer would believe that his actions were lawful under these circumstances. It follows Wood is not entitled to qualified immunity. Summary judgment will be entered for Schwab against Wood on the false arrest claim while Wood's motion on the same claim will be denied.

■ With respect to Beck and Dennis, the record indicates that upon their arrival at the truck plaza, Wood informed them that he observed Schwab putting on his clothes and that he suspected that Schwab was with a prostitute. The truck plaza was known to Beck and Dennis as a place where prostitution occurred. Wood's information coupled with their knowledge of prostitution in the area provided Beck and Dennis with a reasonable suspicion that Schwab was engaged in the criminal offense of patronizing a prostitute in violation of 11 *Del.C.* § 1343. Further, Wood informed Beck and Dennis that Schwab had refused to produce identification or exit the

truck. This coupled with Wood's untrue communicated suspicion about a prostitute in the cab of the truck would also constitute a basis for a resisting arrest charge under 11 *Del.C.* § 1257.[10] Beck and Dennis were entitled to rely upon Wood's information since the record does not contain information which suggests such reliance was unreasonable. Under a qualified immunity analysis, a reasonably well-trained officer in the position of Beck and Dennis could easily conclude that their seizure of Schwab was lawful.

An analysis under *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), yields the same result. In *Hensley*, the Supreme Court set forth criteria for when a police officer may detain an individual in reliance upon information supplied by another police officer. In that case, Ohio police had issued a "flyer" stating that the plaintiff was wanted for investigation of an aggravated robbery. Pursuant to the flyer, Kentucky police officers stopped the plaintiff, and upon seeing a handgun in plain view, arrested the plaintiff for weapons possession.

The Supreme Court held that under these circumstances, such detention would pass constitutional muster if (a) the officer effecting the detention acted "in objective reliance on a flyer or bulletin"; (b) "the police who *issued* the flyer or bulletin possessed a reasonable suspicion justifying a stop"; and (c) "the stop that in fact occurred was not significantly more intrusive than would have been permitted the issuing department." 469 U.S. at 233, 105 S.Ct. at 682 (emphasis in the original).

If the flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then reliance on that flyer or bulletin justifies a detention to check for identification, to pose questions to the person, or to detain the person briefly while attempting to obtain further information. *Id.* at 232, 105 S.Ct. at 682. If the flyer was issued in the absence of a reasonable suspicion, then a

10. *See* p. 583, n. 8, *supra*.

stop based upon the objective reliance upon it violates the fourth amendment. *Id.*[11] Since Wood conveyed information to Beck and Dennis in the absence of reasonable suspicion of criminal activity, Beck and Dennis violated the fourth amendment by assisting in the arrest of Schwab. However, that does not end the matter.

With respect to the issue of liability, the Supreme Court noted that even "if the flyer has been issued in the absence of reasonable suspicion ... the officers making the stop may have a good faith defense to any civil suit.... It is the objective reading of the flyer or bulletin that determines whether other police officers can defensibly act in reliance on it." *Hensley* at 232–33, 105 S.Ct. at 682–83 (citations omitted). *See also Capone v. Marinelli*, 868 F.2d 102 (3d Cir.1989); *Santine v. Roberts*, 661 F.Supp. 1165 (D.Del.1987).

Whether under conventional qualified immunity analysis or specific application of *Hensley*, the result is the same. The information provided to Beck and Dennis by Wood, coupled with the fact that it was known prostitution occurred at the truck stop, provided Beck and Dennis a basis for believing the detention of Schwab was lawful. They are therefore entitled to qualified immunity. Beck and Dennis will be granted summary judgment against Schwab on the false arrest claim and Schwab's motion for summary judgment on the same claim will be denied.

### C. Qualified Immunity—The Excessive Force Claim

The court's next inquiry is whether the law was sufficiently established in 1986

such that a well-trained officer in the position of the defendants would have reasonably known that the exertion of force against Schwab constituted a violation of Schwab's constitutional rights. A review of the law extant at the time of Schwab's arrest yields the conclusion that the right to freedom from excessive force was clearly established in November 1986. Prior to this incident, the Third Circuit appellate court had clearly enunciated the principle that a police officer may not apply excessive force while effecting an arrest.

A law enforcement officer's infliction of personal injury on a person by the application of undue force may deprive the victim of a fourteenth amendment "liberty" without due process of law.... "The protection of fundamental liberties by the due process clause and the eighth amendment extends to protection from an official's abusive exercise of his powers to inflict grossly undue harm."

*Black v. Stephens*, 662 F.2d 181, 188 (3d Cir.1981), *quoting Rhodes v. Robinson*, 612 F.2d 766, 772 (3d Cir.1979) (citations omitted), *cert. denied*, 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982). Deprivations of an individual's liberty would violate the fourteenth amendment if they were such that they "shocked the conscience." *See Rhodes v. Robinson, supra, quoting Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952). Consequently, the constitutional infirmity of excessive force was "clearly established" at the time of the incident at the Truck Plaza.[12]

---

**11.** The principle of *Hensley* is not just limited to police flyers and bulletins. *See United States v. Rodriguez*, 831 F.2d 162 (7th Cir.1987) (drug enforcement agency's reasonable suspicion of individual's involvement with criminal activity conveyed through direct request to police officer; DEA agent pointed out specifically the automobile to be stopped); *United States v. Ferreira*, 821 F.2d 1 (1st Cir.1987) (first police officer's reasonable suspicion conveyed to second police officer conveyed by a shout).

**12.** The Supreme Court held in *Graham v. Connor* that excessive force claims should properly be analyzed under fourth amendment "reasonableness" standard, rather than under a substan-

tive due process analysis under the fourteenth amendment. *Connor* refocused the mode of analysis that courts should use with respect to the existing right of freedom from excessive force. *See Ospina v. Dept. of Corrections*, 749 F.Supp. 572 (D.Del.1990). Therefore, a *Connor* analysis was employed in Section III. B. to ascertain whether there was use of excessive force. However, a qualified immunity analysis must focus upon the law as it existed at the time of the alleged use of excessive force. At that time, a fourteenth amendment analysis was employed by the courts and must be used by this court since the events occurred in 1986 well before *Connor* changed the standard for analysis.

The court next directs its inquiry as to whether a well-trained officer could reasonably believe that the actions of the defendants were lawful. This analysis will be directed to each of the defendants individually.

▊ Both Schwab and Wood agree that Wood participated in physically pulling Schwab from the cab, although Beck stated Schwab jumped to the ground from the cab voluntarily. This discrepancy need not detain one because it is uncontested that Wood put handcuffs on Schwab against Schwab's will. As previously discussed, Wood had no reasonable suspicion of Schwab's involvement in criminal activity. A well-trained police officer could not reasonably conclude that the use of force subsequent to an arrest without reasonable suspicion does not violate the arrestee's rights. Consequently, Wood is not entitled to qualified immunity and the court will grant Schwab's motion for summary judgment on the excessive force claim against Wood.

With regard to Beck, it must be kept in mind that she believed Wood had a reasonable suspicion that Schwab was involved in criminal activity. Therefore, she would be entitled to qualified immunity if the force she used were not excessive. Schwab's opening brief in support of his summary judgment motion states that Beck had beat Schwab with her blackjack before Schwab was handcuffed. However, Schwab's deposition testimony does not indicate whether the alleged blackjacking occurred before, during or after the handcuffing.

If the force was applied before or during the handcuffing, the force may have been reasonably necessary and justified by the circumstance, and, if so, Beck is entitled to qualified immunity. However, if Schwab was not actively resisting arrest, Beck's alleged blackjacking of Schwab would constitute excessive force and no reasonable officer could have concluded otherwise. See Kidd v. O'Neil, 774 F.2d 1252, 1256–58 (4th Cir.1985) ("... the use of any significant force, up to and including deadly force, not reasonably necessary to effect an arrest—as where the suspect neither resists nor flees or where the force is used after a suspect's resistance has been overcome or his flight thwarted—would be constitutionally unreasonable."). Furthermore, if the alleged blackjacking occurred after Schwab was handcuffed, a well-trained police officer would have realized that the infliction of physical punishment upon a handcuffed arrestee violated Schwab's rights and Beck's conduct would not be shielded by qualified immunity.

▊ There is a genuine issue of fact on the present record which precludes the court finding that, as a matter of law, the force employed by Beck was reasonable and not shocking under the circumstances, or that a reasonable officer could conclude that such actions were lawful. The court will deny Beck's application for qualified immunity from suit under section 1983. The fact-finder must determine if Beck acted reasonably and with justification with respect to the exertion of force during the incident. See Cooper v. Merrill, 736 F.Supp. 552, 560–61 (D.Del.1990).

There is another theory of liability which implicates whether the defendants may assert qualified immunity against Schwab's section 1983 claim for excessive force. In 1986, it was clearly established that a police officer may commit a constitutional violation by failing or refusing to intervene when an unprovoked physical punishment is meted out to an arrestee or prisoner. See Bruner v. Dunaway, 684 F.2d 422, 426 (6th Cir.1982), cert. denied, 459 U.S. 1171, 103 S.Ct. 816, 74 L.Ed.2d 1014 (1983); Putman v. Gerloff, 639 F.2d 415, 423 (8th Cir. 1981); Bracey v. Grenoble, 494 F.2d 566 (3d Cir.1974); Skevofilax v. Quigley, 586 F.Supp. 532, 543 (D.N.J.1984); Davidson v. Dixon, 386 F.Supp. 482 (D.Del.1974).

In the leading case on the duty to intervene against summary physical punishment, Byrd v. Brishke, 466 F.2d 6, 11 (7th Cir.1972), the Seventh Circuit Court of Appeals stated:

> We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third per-

son in his presence or otherwise within his knowledge. That responsibility obtains when the nonfeasor is a supervisory officer to whose direction misfeasor officers are committed. So, too, the same responsibility must exist as to non-supervisory officers who are present at the scene of such summary punishment, for to hold otherwise would be to insulate nonsupervisory officers from liability for reasonably foreseeable consequences of the neglect of their duty to enforce the laws and preserve the peace.

■ In determining liability, factors considered are (a) whether the officer had actual knowledge of the physical punishment, (b) whether the officer acquiesced in the punishment, (c) whether the officer was present, and (d) the knowledge of each officer as to whether force could be used. *See Bracey v. Grenoble,* 494 F.2d 566 (3d Cir.1974); *Davidson v. Dixon,* 386 F.Supp. 482 (D.Del.1974).

■ Schwab alleges that Wood poked him in the back after he was handcuffed. If this event had transpired as Schwab alleges and Beck acquiesced in this exertion of force, then she would not be entitled to qualified immunity because no reasonable officer would conclude that such force against a handcuffed arrestee was constitutional. In light of the conflicting allegations in the record, the factfinder will resolve whether such force was employed, and thereby establish whether Beck is liable for witnessing force exerted by Wood.

With respect to Dennis, his alleged participation in the use of excessive force is twofold: (1) he aided in pulling Schwab from the cab of the truck and (2) he witnessed the use of unnecessary force against Schwab and did nothing about it, although presumably in a position to do so. Because Dennis believed Schwab had been involved in criminal activity, grabbing his leg to pull him from the cab of the truck does not shock the court's conscience and Dennis is entitled to qualified immunity absent the uncertainty over his witnessing the alleged punishment.

As there is a genuine issue of material fact regarding Dennis' presence at the time of Wood's alleged poking of Schwab and during Beck's alleged blackjacking, the court cannot conclude as a matter of law that Dennis' alleged inaction was reasonable or not shocking, or that a reasonable officer would reasonably believe in the lawfulness of such inactivity.[13] The court will deny Dennis' application for qualified immunity.

In summary, Schwab is entitled to summary judgment against Wood on the excessive force claim against Wood. Because of factual disputes, Schwab's summary judgment motion against Beck and Dennis and the summary judgment motion of Beck and Dennis against Schwab on the excessive force claim will be denied.

### D. Qualified Immunity—The Illegal Search Claim

■ The defendants also assert a qualified immunity defense to Schwab's illegal search claim. It is clear that in 1986 a search of Schwab's truck could only follow a lawful arrest. *See* Section III. C., *supra.* Since neither Beck nor Dennis could have known that Wood lacked reasonable suspicion to detain Schwab, it was reasonable for them as reasonably well-trained police officers to assume that the search of the truck followed a lawful arrest. Summary judgment will be granted to Beck and Dennis against Schwab and denied as to Schwab against Beck and Dennis on Schwab's illegal search claim.

With respect to Wood, there remains the dispute concerning his participation in the search of Schwab's cab. In the event that the factfinder concludes that Wood participated in the search, Wood will be precluded from asserting qualified immunity because no reasonable officer could reasonably believe that a search subsequent to an arrest without reasonable suspicion is not violative of the fourth amendment.

---

**13.** The court need not linger over whether Wood is liable for witnessing these exertions of force as Wood's liability has already been established under another theory of liability.

 

E. Qualified Immunity—Malicious Prosecution Claim

With respect to Schwab's malicious prosecution claim, there remains a genuine issue of material fact with respect to whether Wood acted maliciously or for a purpose other than bringing Schwab to justice. If the factfinder concludes that Wood acted with malice, Wood would be precluded from invoking qualified immunity because no reasonable officer could conclude that he could maliciously initiate a criminal proceeding for a purpose other than bringing a defendant to justice without doing violence to the defendant's rights.

## V. Pendent State Claim for Assault and Battery and Malicious Prosecution

The defendants assert that this court should dismiss the pendent state assault and battery claims and malicious prosecution because Schwab has failed to establish his entitlement to relief on the federal claims. In *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), the Supreme Court held that federal courts have the power to hear state law claims that "derive from a common nucleus of operative fact" with federal claims. *Id.,* at 725, 86 S.Ct. at 1138. Since Schwab has established his right to proceed upon the federal claims, he will be permitted to move forward on his state claims against the defendants.

## VI. Summary

The respective motions of the parties for summary judgment will be granted in part and denied in part as follows. On the false arrest claim, summary judgment will be entered for Schwab against Wood and for Beck and Dennis against Schwab. Conversely, Wood's motion against Schwab will be denied as will Schwab's motion against Beck and Dennis.

Schwab's motion for summary judgment on the excessive force claim against Wood will be granted, and Wood's motion against Schwab will be denied. The remaining respective cross-motions for summary judgment on the excessive force claim will be

denied because of the presence of issues of material fact.

Beck and Dennis will be granted summary judgment against Schwab on his unlawful search claim and Schwab's cross-motion against them will be denied. With respect to the remaining defendant, Wood, the cross-motions on the unlawful search claim will be denied because there is a material issue of fact as to whether Wood participated in the search.

The cross-motions of Schwab and Wood on the malicious prosecution claim will be denied because of the presence of material issues of fact going to the existence of malice and whether Schwab suffered injury or damages.

Summary judgment will be denied defendants on plaintiff's pendent state law claims of assault and battery and malicious prosecution claims.

An order will be entered in accordance with this opinion.